SCHUTZ *v.* KALAMAZOO IMPROVEMENT CO.

1. BANKS AND BANKING—ASSETS TAKEN OVER BY STATE BANKING COMMISSIONER—STATUTES.

When the commissioner of the State banking department takes over the affairs and assets of a bank pursuant to statutory authority it is done for the protection and preservation, not only of the assets of the corporation, but also of the assets and interests of the various trusts in possession and control of the bank (Act No. 32, Pub. Acts 1933).

2. SAME—INSOLVENCY—RECEIVERS.

The affairs of an insolvent bank which pass to its receiver include all of its business interests, including trust estates of every character held by the bank, mortgages, equitable liens and causes of action accruing to the bank against officers and directors for wrongful acts causing the insolvency.

3. SAME—RECEIVERS—OFFICERS AND AGENTS.

When a bank or trust company is placed in the hands of a receiver its capacity to continue to do business and the capacity of its officers and agents to continue its affairs ceases.

4. SAME — RECEIVERS — TRUSTS — SUCCESSOR ADMINISTRATORS AND TRUSTEES.

Whether a bank or trust company receiver is appointed by the court or banking commissioner, the receiver has the duty of handling trusts committed to the insolvent corporation until a successor administrator or trustee is duly appointed.

5. SAME—RECEIVERS—AUTHORITY AS TO TRUST ASSETS.

Commissioner of State banking department, having taken possession of an insolvent bank under authority of a statute and appointed a receiver to act for him in the conservation, control and management of the corporate affairs, including its trusts, the receiver could under no circumstance delegate authority so conferred to any other person and is under duty to proceed to recover asset disposed of by an employee who has acted without authority to do so (Act No. 32, Pub. Acts 1933).

6. SAME—RECEIVERS—TRUSTS—WAIVER—LACHES—ESTOPPEL.

The receiver of an insolvent bank cannot waive the rights of beneficiaries of a trust committed to its care nor may the beneficiaries of the trust be estopped by any laches on the part of the receiver to act promptly in proceeding to recover property disposed of by the receiver's employee, acting without authority.

7. SAME—RECEIVERS—SETTING ASIDE UNAUTHORIZED SALE OF TRUST ASSET.

Receiver of insolvent bank, who was appointed by State banking commissioner, *held*, to have acted within a reasonable time after discovery of an unauthorized sale of a trust asset by an employee of a predecessor receiver to set same aside (Act No. 32, Pub. Acts 1933).

8. Estates of Decedents—Probate Courts—Jurisdiction—License to Sell—Bank Receivers.

Probate court *held*, without jurisdiction to act upon petition, filed by a trust officer of an insolvent bank which had been appointed administrator *de bonis non* with will annexed, for license to sell any property belonging to the estate and all proceedings had thereunder void since neither the receiver nor any one acting under him had authority so to act (Act No. 32, Pub. Acts 1933).

9. Equity—Good Faith Improvements or Repairs—Values.

Generally one who goes into possession of property under color of title and in good faith makes expenditures for improvements or repairs on such property, upon being dispossessed is not entitled to recover amount of expenditures on the property but the amount that the value of the property has been enhanced by reason of repairs or improvements made thereon.

10. Appeal and Error—Equity—Questions Reviewable—Values.

In bank receiver's proceeding to set aside sale of trust asset, consisting of improved lake frontage, if defendants be bound by testimony of their witness who placed valuation of $13,000 on property for which defendant paid $6,000 of $8,000 purchase price and spent over $14,000 in improvements and repairs, defendants would not be in a position to complain of trial judge's allowance of about three years' rental value and $500 worth of personal property toward improvements, and determination as to good faith of defendants' occupancy of the property under color of title and making of improvements would be unnecessary, where purchase was effected through an employee of receiver's predecessor not authorized to sell it.

11. Trusts—Fiduciary's Sale of Trust Property to Self.

One occupying a fiduciary position with respect to property is charged with knowledge that sale to himself, either directly or indirectly, would be voidable.

12. Estates of Decedents — Avoidance of Sale — Inadequacy of Price—Fiduciary Relation.

Sale by unauthorized trust officer at an inadequate price for asset of estate, for which bank had been appointed administrator *de bonis non* with will annexed, after bank went into receivership to bank director who had acted in advisory capacity with respect to the trust *held*, not valid at suit of bank's receiver as without authority and, even if authority be conceded, the pur-

chase by such a purchaser constituted a breach of his fiduciary relation.

13. EQUITY—IMPROVEMENTS—GOOD FAITH—TRUSTS.

    Corporation, all of whose shares of stock were held in trust by one who occupied fiduciary relation as to premises purchased by it at a grossly inadequate price *held*, not a good faith occupant so as to permit recovery by it for repairs and improvements.

    WIEST, C. J., and BUTZEL, J., dissenting in part.

Appeal from Kalamazoo; Lamb (Fred S.), J., presiding. Submitted January 18, 1938. (Docket No. 46, Calendar No. 39,814.) Decided May 4, 1938.

Bill by Charles H. Schutz, receiver of Bank of Kalamazoo, as administrator *de bonis non* with will annexed of estate of Austin H. Dwight, deceased, aganist Kalamazoo · Improvement Company, a Michigan corporation, Stephen B. Monroe and others to set aside a deed, for an accounting and other relief. Austin W. Dwight and Lyman Dwight intervened as parties plaintiff. Decree for plaintiffs. Defendants appeal. Affirmed.

*Hugh E. Wilson*, for plaintiffs.

*Kim Sigler*, for interveners.

*Travis, Merrick & Johnson*, for defendants.

CHANDLER, J. On May 4, 1926, Austin H. Dwight, a resident of Kalamazoo, died testate. His last will and testament was regularly admitted to probate in Kalamazoo county, and Herbert W. Parker first qualified and acted as executor until his death on September 10, 1928. Thereafter, the Kalamazoo Trust & Savings Bank, later designated as the Bank of Kalamazoo, was appointed administrator *de bonis non* with will annexed of the estate of Austin H. Dwight. Among the assets of the Dwight estate

was a tract of land of approximately 547 acres known in this proceeding as the Gun Lake property, being located in the township of Orangeville, Barry county, and bordering on the southerly and westerly shores of what is known as Gun Lake. The record shows that Austin W. Dwight and V. Lyman Dwight, intervening plaintiffs, and others, are beneficiaries under the last will and testament of decedent.

The Bank of Kalamazoo conducted a general banking and trust business in the city of Kalamazoo and acted in a fiduciary capacity in relation to a large number of estates and trusts. In February, 1933, this institution was taken over by the commissioner of banking of the State of Michigan, and on March 31, 1933, one Earle D. Albertson was appointed conservator of said bank by the commissioner of banking pursuant to Act No. 32, Pub. Acts 1933. On December 4, 1933, Mr. Albertson was appointed and qualified as receiver of said bank and acted in that capacity until September 8, 1934, when he was succeeded by Charles H. Schutz who has acted as receiver until the present time.

The record shows that defendant Stephen B. Monroe was the largest stockholder in the Bank of Kalamazoo, was one of its directors, and a member of the advisory committee of the trust department. Mr. Monroe is and was a member of the bar but has never actively engaged in the practice of his profession. Stanley C. Frost became connected with this bank in June, 1927, when he instituted its trust department and became 'its trust officer. On August 17, 1928, upon motion of Mr. Monroe, Mr. Frost was elected vice-president of the Bank of Kalamazoo. Mr. Albertson, the conservator, employed Mr. Frost and directed him to take charge of and manage the trust department of the bank and Mr. Frost continued in the employ of the conservator

and receiver until May 15, 1934. Mr. Frost was also a member of the bar and was engaged in the practice of law at the time he entered said bank as trust officer.

The bill of complaint filed by Mr. Schutz, as receiver, alleges (and is supported by evidence) that on this Gun Lake property there is a well-built and capacious home which could not be reproduced for less than $20,000, also a tenant house and barn and other buildings suitable for the maintenance of a large country estate which could not be reproduced for less than $7,500, together with a great amount of shrubbery and landscaping improvements, and that said property in April, 1934, which was the date of its alleged sale, was well worth upwards of $25,000, and was valued on the assessment rolls at the sum of $27,000. These values are supported by considerable testimony found in the record.

Plaintiff claims that after his appointment as receiver he was informed that the Gun Lake property had been sold to the Kalamazoo Improvement Company, one of the defendants herein, for the sum of $7,500, also that certain personal property belonging to the estate of Mr. Dwight, deceased, which was on the premises, had been sold to the Kalamazoo Improvement Company for $500, and that the purchaser for some reason or reasons, of which the receiver was not advised, had only paid $3,000 of the purchase price of said property. Plaintiff further alleges that upon making inquiries as to why the remaining purchase price of said property had not been paid he was advised by Mr. Frost that said payments would be made, and that later, and on February 6, 1935, the Kalamazoo Improvement Company paid to the receiver the sum of $3,000 as a further payment on the purchase price of said property, which the receiver received as administrator of

the estate of Austin H. Dwight, deceased, without knowing at that time the facts in relation to the alleged sale. The receiver claims that at an interview with Mr. Frost he (the receiver) was requested to enter into an arrangement in a suit then pending in the circuit court of Barry county to quiet title for the Kalamazoo Improvement Company to the property in question; that he told Mr. Frost that the remaining purchase price of said real estate and personal property had not been paid and that the same should first be paid or it would be necessary for him to file a cross-bill and take affirmative action to secure a lien on the Gun Lake property. No payments being made, he caused further investigation to be made concerning the facts and circumstances surrounding the alleged sale of said property to the Kalamazoo Improvement Company, and that he then learned for the first time that the said Stanley C. Frost, acting in the name of the Bank of Kalamazoo, by himself as trust officer, had filed a petition with the probate court in February, 1934, asking for a license to sell the said Gun Lake property, that later and in March, 1934, a license was issued to the said Stanley C. Frost, as an officer of the Bank of Kalamazoo, and thereafter the said Stanley C. Frost, as an officer of said bank filed a report of sale of the property in the probate court, and on April 5, 1934, executed a deed thereof to the Kalamazoo Improvement Company, which deed had been recorded. He found the testimony of freeholders taken in the probate court fixed the value of the property at $7,500 and also found that on April 7, 1934, Mr. Frost, as an officer of the Bank of Kalamazoo, without the knowledge of the receiver of said bank paid delinquent taxes on the property in the amount of approximately $2,200, and that later the said Frost, as an officer of the Bank of Kalamazoo, reported to

the probate court that in order to sell said real estate for $7,500 he had been required to agree with the purchaser to sell all personal property on the Gun Lake property for the sum of $500, and that $500 was as much or more than could be realized from the sale of said personal property at auction.

The receiver claims that after securing this information he made further investigation and found that the stockholders in the Kalamazoo Improvement Company, a corporation, were Albertine H. Brown, Charles J. Monroe and George E. Monroe, who were the children of Stephen B. Monroe, and that Stephen B. Monroe, who was the largest stockholder in the Bank of Kalamazoo, a director of said bank and who had formerly been president of the Kalamazoo Savings & Trust Company, had negotiated with the said Stanley C. Frost for the purchase of said property for the Kalamazoo Improvement Company; that he ascertained that Stanley C. Frost, trust officer of the Bank of Kalamazoo, had secured his position in the bank through Stephen B. Monroe who was for many years active in the management of the bank, and that the relations of Mr. Frost and Mr. Monroe were very close, and that Frost knew that Mr. Monroe was acting for and on behalf of the Kalamazoo Improvement Company, the stock of which was owned entirely by members of his family, and that Mr. Monroe held all of the stock in the company as trustee for his children.

After securing this information the receiver filed the bill of complaint in this case making the Kalamazoo Improvement Company, Stephen B. Monroe, Albertine H. Brown, Charles J. Monroe and George E. Monroe, defendants, charging that these defendants had perpetrated a fraud upon the estate of Mr. Dwight and further charging that Stanley C. Frost

in securing the license to sell and in the selling of the property to the Kalamazoo Improvement Company had pursued such proceedings as trust officer of the Bank of Kalamazoo, and that he had perpetrated a fraud upon the receivership and also upon the probate court of the county of Kalamazoo, and that he had acted without any authority in the matter; that the probate court had no jurisdiction to entertain the petition filed by Frost and no jurisdiction to make the order of sale, and that the deed from Frost, as trust officer of the Bank of Kalamazoo, to the defendant was void. In his bill of complaint he asks for an accounting from defendants for the personal property which they acquired from Frost and also an accounting for the rents and profits of the premises which have been occupied by the defendant corporation from the time of the execution of the deed until the filing of the bill of complaint on May 9, 1936.

The defendants moved for the dismissal of the bill of complaint which was denied, and an answer was filed denying the allegations of fraud, denying that Frost had no authority to proceed as he did in the probate court, denying that the Gun Lake property at the time of its purchase by defendant was worth more than the corporation paid for the same, and insisting that the personal property was not worth to exceed $500.

The defendant corporation claims and produced testimony in support thereof tending to show that the cost of repairs and improvements placed by it upon the Gun Lake property amounted to the sum of $14,232, and insists that it is entitled to have this amount decreed a lien against the property in case the deed is set aside. The testimony as to the value of the property in question in 1934 is conflicting.

Plaintiff produced many witnesses who placed the value of this property at the time of the alleged sale from $15,000 to $40,000. The property was placed on the assessment roll in 1934 at $27,000 but was reduced by the board of review to $25,000. On the other hand, defendants offered testimony fixing the value of the property in 1934 at $7,500 to $8,000. Two of defendant's witnesses testified that they would not have accepted the property as a gift if they were required to pay the taxes thereon. One of the defendants' witnesses placed the value of the property as of the time of the trial at $25,000; another estimated the present value at $13,000, being considerably less than the claimed cost of repairs and improvements that had been placed thereon since 1934. Defendant Stephen B. Monroe fixed the value of the property at the time he acquired it at $8,000, and at the time of the hearing stated that he was willing to sell the same for $17,000, which is quite conclusive that he did not believe that the value of the property had been enhanced to the extent of the cost of repairs and improvements. In 1928, Mr. Frost, as trust officer of the bank, was asking $50,000 for the property; in 1932 he asked $35,000; in 1933, the property was offered for sale by Frost at $25,000. Some of the witnesses evidently expressed their opinion on its value for farming purposes; others, for resort purposes as this property had between 3,000 and 4,000 feet lake frontage on Gun Lake, one of the large inland lakes of the State of Michigan, the shores of which were occupied quite extensively for resort purposes.

The trial court made no finding as to the value of the property in 1934, evidently being of the opinion that its value was not an important factor in view of the conclusions reached by him. He found that

the probate court had no jurisdiction to entertain or make an order of sale on the petition of Stanley C. Frost, as trust officer of the Bank of Kalamazoo, and that the sale was absolutely void. By his decree he directed that the $6,000 which had been paid by defendant should be returned by plaintiff with interest at five per cent. per annum from the time of the entry of the decree until the time of payment to defendant. He decreed that said amount should be made a lien upon the property until paid, and that said sum should be paid within six months from the date of the decree in the event that defendants did not appeal, and if not paid pursuant to the decree, defendants might foreclose the lien according to the statute in such case made and provided. The court also decreed that the property was not in a tenantable condition at the time of the sale to the defendant corporation and that it was necessary to make substantial repairs before the property could be restored to a condition of occupancy, and that defendant expended the sum of $14,232 upon the property, a portion of which was for essential repairs and a portion for permanent betterment for the establishment of a family country estate. He decreed further that the personal property acquired by the defendant might be retained by it, and the value of such personal property, together with the fair rental value of the property from the time defendant took possession until the entry of the decree, should operate as a complete set-off against the claims of defendant corporation, covering expenditures for essential repairs and for taxes paid by defendant since the alleged sale, and that neither party should be entitled to further or other allowance applicable to these items. All expenditures made by defendants for permanent betterment and which were not

necessary to restore the property to a tenantable condition "are determined, decreed and deemed to have been made at defendant's own risk and expense." From this decree, only the defendants have appealed.

We find that the only questions involved in this appeal are:

1. Did the Bank of Kalamazoo by its trust officer have any authority to sell any of the assets of the estate of decedent Dwight after the appointment of a receiver?

2. Did the probate court have jurisdiction to entertain the petition of the Bank of Kalamazoo for license to sell the real estate belonging to the Dwight estate?

If these two questions are answered in the negative, as they must be, then the question arises:

3. To what extent, if any, are the defendants entitled to be reimbursed for any expenditures made by them, or any of them, in the repair and improvement of the property involved?

(1) When the affairs and assets of the Bank of Kalamazoo were taken over by the commissioner of banking of the State of Michigan pursuant to the authority vested in him by the statutes, it was done for the protection and preservation, not only of the assets of the corporation, but also of the assets and interests of the various trusts in possession and control of said bank.

"The affairs of an insolvent bank which pass to its receivers include all of its business interests, including trust estates of every character held by the bank, mortgages, equitable liens, and causes of action accruing to the bank against officers and directors for wrongful acts causing the insolvency." (9 Zollman on Banks and Banking (Perm. Ed.), p. 361, § 6291.)

There can be no question in this State on the proposition that when a bank or trust company is placed in the hands of a receiver its capacity to continue to do business and the capacity of its officers and agents to continue its affairs ceases. An annotation in 102 A. L. R. 124 discloses a conflict of authorities on this proposition, and the case of *Wallace* v. *Guaranty Trust Co.*, 259 Mich. 342, is frequently referred to therein. The *Wallace Case* holds that the receiver steps into the shoes of the original trustee and is entitled to exercise its rights and powers with respect to the trust property until a successor trustee is appointed by the court. See, also, *Glerum* v. *Spencer*, 251 Mich. 163; *In re Strasser's Estate*, 220 Iowa, 194 (262 N. W. 137, 102 A. L. R. 117); *In re Carson's Estate*, 221 Iowa, 367 (265 N. W. 648); *Sullivan* v. *Kuolt*, 156 Wis. 72 (145 N. W. 210).

At the time of the decision in *Wallace* v. *Guaranty Trust Co.*, *supra*, the power of appointment of receivers for banks and other corporations was in the courts. At the time of the proceedings in the instant case the appointment of receivers for banking and trust corporations was in the hands of the commissioner of banking, but in both instances it becomes the duty of the receiver to handle trusts committed to the insolvent corporation until a successor administrator or trustee is duly appointed, and here it became the duty of the receiver of the Bank of Kalamazoo to conserve the Dwight estate until the appointment, by a court having jurisdiction, of a successor administrator upon a proper petition. The commissioner of banking having taken possession of this insolvent institution under the authority of the laws of this State and appointed a receiver to act for him in the conservation, control and management of the affairs of the corporation, including its trusts, such receiver could under no circumstance

delegate such authority to any other person or persons. Furthermore, when the plaintiff in this case, as receiver of the Bank of Kalamazoo, found that certain assets of the trusts in his charge had been disposed of by one of his employees, he was not only authorized, but it became his duty to take proceedings to recover such assets for the benefit of the trust. He could not waive the rights of the beneficiaries of the trust, and the beneficiaries of the trust could not be estopped by any laches on the part of the receiver to act promptly in proceeding to recover such property. In the instant case, however, we find that the receiver did act within a reasonable time after the discovery of the irregularities of which complaint is made.

(2) The probate court was without jurisdiction to act upon the petition filed by the Bank of Kalamazoo by its trust officer for a license to sell any property belonging to the Dwight estate, and all proceedings had thereunder are void.

(3) This brings us to the question as to whether the trial court erred in refusing to grant a lien in favor of the defendant corporation for the amount of its expenditures in repairs and improvements on the Gun Lake property. As a general proposition one who goes into possession of property under color of title and in good faith makes expenditures for improvements or repairs on such property, upon being dispossessed is not entitled to recover the amount of expenditures on said property, but the amount that the value of the property has been enhanced by reason of repairs or improvements made thereon. *Acker* v. *Weadel*, 236 Mich. 374. In the instant case, there was proof on the part of plaintiff, which was undisputed, that the annual rental value of the premises was $2,500, and at the time of the hearing, the latter part of March, 1937, the defend-

ants had been in possession of the property nearly three years. Defendants were permitted by the decree to retain the personal property of the value of $500, which, together with the rental value, was allowed to defendants for expenditures on the property. One of the defendants' witnesses placed the value of the property at the time of the hearing at $13,000. If defendants are to be bound by the testimony of this witness, the trial judge made an allowance for repairs and improvements in excess of the amount of the increase in the value of the property by reason of such repairs and improvements placed thereon by defendants, and cannot complain of the decree entered. Viewing the case in this light, it would not be necessary for us to determine whether the defendants entered upon the occupancy of the premises under color of title and made expenditures thereon in good faith. However, we are not inclined to evade the responsibility of giving expression to our views as to whether the defendants were good faith occupants of the premises.

The stock in the Kalamazoo Improvement Company was held by Mr. Monroe as trustee for the other defendants, his children. He had created a trust for them. He was the largest stockholder and an active director in the Bank of Kalamazoo. If he was honest in his belief that the Bank of Kalamazoo, an insolvent institution, had the legal right to continue the administration of the Dwight estate, he at least was chargeable with the knowledge that the law would not permit one acting in a fiduciary capacity to sell, either directly or indirectly to himself, assets of the trust, and that such a sale would be voidable. A private and not a public sale was contemplated. The sale itself and the proceedings necessary to consummate the same was by the bank through its officers to a corporation in which he held,

as trustee, all of the stock. We have the assets of one trust, with which Mr. Monroe was connected in a fiduciary capacity, being a director active in the management of the affairs of the corporate administrator and a member of the advisory committee of the trust department, being sold to and augmenting the assets of another trust, held by him as trustee and created entirely with his personal funds. If such a sale could have been made, it would have been a plain violation of a fiduciary relationship even though a fair price was paid for the property sold. We hold that the attempt by the vice-president of the bank to sell the premises to an active director of the bank and one acting in an advisory capacity to the trust, cannot be sanctioned by a court of equity.

We find that the price agreed upon between Mr. Monroe and Mr. Frost of $7,500 was grossly inadequate and do not hesitate to find that the Kalamazoo Improvement Company was not a good faith occupant of the premises, and that its expenditures for repairs and improvements were not made in that good faith which good conscience and equity requires in order to permit recovery. The rule is stated as follows in 14 R. C. L. p. 22:

"A claim for compensation for improvements or betterments can be successfully asserted only by one who is a *bona fide* occupant or possessor for it would be manifestly inequitable to the owner to make allowances for improvements to one who made the expenditures with a full knowledge of superior rights."

The decree of the lower court is affirmed, with costs to plaintiff.

Bushnell, Sharpe, North and McAllister, JJ., concurred with Chandler, J.

Wiest, C. J., (*dissenting in part*). I concur in the voidance of the purchase, but not in penalizing the purchaser by setting off rental against the value of the permanent improvements.

The house was uninhabitable, the outbuildings dilapidated and, without defendant's expenditures, would have become practically worthless long before commencement of this suit.

There should be a survey made of the beneficial improvements, the present value thereof to the property ascertained, and an equitable allowance made therefor and the case should be remanded for such purpose.

Butzel, J., concurred with Wiest, C. J. Potter, J., did not sit.