## OLLIG *v.* EAGLES.

1. EQUITY—UNJUST ENRICHMENT.
   It is by nature equitable that no one be made richer through another's loss.

2. FRAUDULENT CONVEYANCES—FINDINGS OF COURT—EVIDENCE—FRAUD.
   Findings of trial court that defendant's assignment of a land contract to plaintiff's wife, now deceased, and her quitclaim deed of the property to defendant constituted the understanding between the parties and refuted any claim of an oral contract and that there was no proof of fraud in relation to the execution of the instruments *held*, supported by ample evidence in suit to set aside deed and for an accounting.

3. SAME—FRAUD—TITLE TO LAND BY ORAL CONTRACT.
   An attempt to establish title to land by proof of an oral contract in direct conflict with a written instrument of conveyance must fail in the absence of fraud (CL 1948, § 566.108).

---

REFERENCES FOR POINTS IN HEADNOTES
[2, 5] 24 Am Jur, Fraudulent Conveyances § 216 *et seq.*
[3] 55 Am Jur, Vendor and Purchaser §§ 5, 98.
[4] 1 Am Jur, Accounts and Accounting §§ 53, 61.
[6] 2 Am Jur, Appeal and Error §§ 2–4; 3 Am Jur, Appeal and Error § 815.
[7] 27 Am Jur, Improvements § 31.
[8] 19 Am Jur, Equity § 121 *et seq.*
[9] 27 Am Jur, Improvements §§ 6, 7.
[10, 11] 19 Am Jur, Equity § 464; 27 Am Jur, Improvements § 26.
[11, 12, 14, 15] 27 Am Jur, Improvements § 21.
[11, 12, 14, 15] Estoppel by apparent acquiescence in or silence concerning improvements of real property to assert antagonistic title or interest. 76 ALR 304.
[13] 19 Am Jur, Estoppel §§ 64, 65.
[16] 27 Am Jur, Improvements §§ 22, 24.
[17] 27 Am Jur, Improvements § 30.
[18] 14 Am Jur, Costs §§ 10, 11.

4. Accounting—Reference—Discretion of Court.

It was within the discretion of the trial court to have proofs taken before him and deny reference for an accounting, where there is no showing of any very complicated accounts between the parties.

5. Fraudulent Conveyances—Evidence—Fraud.

Bill by administrator of deceased wife's estate to set aside a quitclaim deed she had executed, which was not to be recorded in event she predeceased grantee, was properly dismissed under record presented, where the deed and an assignment of a land contract to her represented the arrangements between the parties thereto in a transaction as to which no fraud was proved; the assignee's expectation of acquiring the land and buildings in event of assignor's death constituting good consideration for improvements made by her to the property (CL 1948, § 566.108).

6. Appeal and Error—Chancery Cases—De Novo Review on Record.

A suit brought by a plaintiff in his individual capacity and in his capacity as an administrator of his wife's estate, being a chancery case, is heard *de novo* on the record in the Supreme Court.

7. Equity—Pleadings—Unjust Enrichment.

The issue of unjust enrichment because of improvements on realty was presented to trial court in suit to set aside quitclaim deed by plaintiff's wife to defendant and for an accounting, where plaintiff's pleadings implied knowledge of the pertinent facts as to status of title on the part of defendant, alleged ignorance of them on the part of plaintiff and claims relief on the grounds of "unjust enrichment" arising from the circumstances.

8. Same—Jurisdiction—Complete Relief.

Equity should determine all the rights of the parties, once it has taken jurisdiction of proceedings.

9. Improvements—Statutes—Ejectment—Equity.

The so-called "betterment" statute, entitling an occupying claimant to compensation for increased value resulting from his improvements, made while he occupied the property in good faith and under color of title, when the fee owner seeks to oust him in ejectment proceedings, does not apply when the improver seeks affirmative relief in equity rather than by way of set-off in ejectment and when plaintiff cannot be held to have acted under color of title or with adverse possession (CL 1948, § 629.43 *et seq.*)

10. EQUITY — TITLE — MISTAKE — ACQUIESCENCE — IMPROVEMENTS
   —ACCOUNTING.
   A court of equity is not powerless to grant relief to an occupy-
   ing claimant who, in good faith but mistakenly, relied upon
   the belief that his wife had title to land and he built a house
   thereon with the full knowledge and silent acquiescence of
   the actual owner and, upon discovery, brings suit in equity
   for an accounting for the value of his improvements.

11. IMPROVEMENTS—EQUITY—GOOD FAITH—ACQUIESCENCE.
   An improver of real estate who made the improvements in good
   faith but under the mistaken belief the premises were his
   is entitled to relief as a plaintiff in a suit in equity, where
   the improvements resulted in the unjust enrichment of the
   title owner who had full knowledge of the improvement as
   it was being made.

12. SAME—ESTOPPEL—FRAUD.
   The title owner of property is equitably estopped to deny an
   occupying improver's right to compensation, where the former
   has by his conduct encouraged the occupant to make such
   improvements, or has so conducted himself while they were
   being made as to make it a fraud for him to take them with-
   out paying therefor.

13. EQUITY—ESTOPPEL—UNJUST ENRICHMENT.
   Equitable estoppel may be regarded as a part of the doctrine of
   unjust enrichment.

14. ESTOPPEL—IMPROVEMENTS.
   One who stands by and sees another purchase land or enter
   upon it under a claim of right and permits such other to make
   expenditures or improvements under circumstances which would
   call for notice or protest cannot afterward assert his own title
   against such person.

15. IMPROVEMENTS—ACQUIESCENCE—ESTOPPEL.
   An owner of property who remains silent as to his title and ac-
   quiesces and assists an occupying claimant in the construc-
   tion of a house thereon is estopped from asserting his legal
   defenses to suit for an accounting by the improver.

16. SAME—VALUE—SET-OFF.
   Plaintiff husband in suit to set aside quitclaim deed, which his
   wife had given to defendant unbeknownst to plaintiff, and for
   an accounting by defendant, *held*, entitled, in his individual
   capacity, to a decree awarding him the reasonable value of
   the improvements he made to the land, excluding any contri-

bution made by the wife and by defendant, and set off by the reasonable rental value of the unimproved land used for the time occupied.

17. WORK AND LABOR—IMPROVEMENTS—LIENS.
    One entitled to the value of improvements made by him on real estate is entitled to a lien on the property under the doctrine of an implied contract.

18. COSTS—FAILURE OF EITHER PARTY TO PREVAIL ENTIRELY.
    No costs are allowed either party in suit wherein neither has prevailed entirely.

Appeal from Macomb; Noe (Alton H.), J. Submitted June 12, 1956. (Docket No. 59, Calendar No. 46,761.) Decided October 1, 1956. Rehearing denied December 4, 1956.

Bill by Joseph Ollig, individually and as administrator of the estate of Selma Ollig, deceased, against Lester A. Eagles to set aside deed and for accounting for improvements made on property. Bill dismissed. Plaintiff appeals. Affirmed in part, reversed in part and remanded.

*LaBarge, Kramer, Hudnut & Cashen (James H. Hudnut, of counsel), for plaintiff.*

*Leo B. Lange (Meyer Weisenfeld, of counsel), for defendant.*

EDWARDS, J. This suit is a chancery action brought by a man who built a house on land he mistakenly believed to belong to his wife, but which, on her death, proved to belong to another. The latter, knowing he had title, had silently watched and even assisted in the building.

The builder seeks title or compensation. The owner contends that the law allows no recovery for such a mistake. The trial judge below denied relief, saying, this is "a strange case."

With this observation we can agree. Such mistakes have, however, tortured judges from the dawn of legal history. A Roman jurist, faced perhaps with a similar problem, gave us this adage: "For this by nature is equitable, that no one be made richer through another's loss.*" Combinations of human cupidity and stupidity have frequently confronted the courts with cases where strict application of legal rules would unjustly enrich one at the expense of another. Such cases gave rise to the rules of equity which we here seek to apply.

Let us now turn to the facts in this case.

Joseph Ollig, individually and as administrator of the estate of Selma Ollig, his wife, who died on September 25, 1945, filed a bill of complaint praying that a certain quitclaim deed from his wife to defendant Lester A. Eagles, dated April 5, 1944, be set aside and that an accounting between himself individually and the estate of his deceased wife and defendant Lester A. Eagles be ordered. At the conclusion of the proofs and argument the trial judge dismissed the bill of complaint on the ground that the plaintiff had not made out a case, and it is from this decision that the current appeal is taken.

In 1939 Eagles began rooming and boarding with Mr. and Mrs. Ollig who then lived on Pelkey avenue in Detroit. He paid them for room and board $11 per week. In 1943 Eagles located a piece of farm property on Schoenherr road, and after he and Mr. Ollig looked it over the defendant Eagles bought it in his own name on land contract. It is undisputed that subsequently Eagles made all the payments on this land contract.

---

\* Pomponius, quoted in Mommsen's Corpus Juris Civilis, Vol 1, D 12, 6, 14. "*Nam hoc natura aequum est neminem cum alterius detrimento fieri locupletiorem.*"

After Eagles bought the land in the fashion indicated above, Ollig began the construction of a house and various outbuildings upon the land, and in the spring of 1944 the Olligs moved from Pelkey avenue in Detroit to the Schoenherr road property in Macomb county and set up houseckeeping therein. Eagles likewise moved onto this property, but apparently lived separately from the Olligs in a house trailer.

Ollig, the only witness called for the plaintiff, testified that he paid for all the materials used in building the house and that Eagles only contributed in a minor way to the labor involved therein. Ollig further testified that at the time Eagles purchased the property there was an oral agreement between the parties that the payments Eagles made on the land contract would be in lieu of paying room and board. Ollig claimed that Eagles continued to board with them after moving onto Schoenherr road although it may be inferred that he did not pay the Olligs anything after the move.

Ollig testified further that in April, 1944, for the first time he learned that neither he nor his wife were named as purchasers in the land contract and that he ceased work until he could get some "security." He further testified that one day in April, while he was at work, Mrs. Ollig and Eagles went to see Mr. Leo B. Lange, Eagles' attorney, and there Eagles executed an assignment of the land contract to Mrs. Ollig. Ollig testified he was told he was not named in that assignment because he was not present. Ollig implied in all his testimony that he understood this assignment as fulfillment of a prior oral agreement for title to be placed in him and his wife. He denied ever seeing or hearing of any quitclaim deed from Mrs. Ollig to Eagles until the beginning of the present suit.

Mr. and Mrs. Lange were the only witnesses called by the defendant Eagles. They testified that on April 4, 1944, Eagles and Mrs. Ollig came to see Mr. Lange. Mrs. Lange apparently was present at the conference. Eagles told Lange he wanted to make a will, that he was an orphan and that he wanted Mrs. Ollig, whom he called "Mom", to have whatever he had. After some discussion, according to the Langes' testimony, a question about cost of court proceedings to probate the will was raised, and Lange advised Eagles that he could make out an assignment of his land contract to Mrs. Ollig and take a quitclaim deed back from her for his protection. In this event, Lange counseled, if Eagles died Mrs. Ollig would take his interest in the land contract, whereas if Mrs. Ollig died first he could record the quitclaim deed from her and render the assignment a nullity.

In pursuance of these discussions, the Langes testified, an assignment of Eagles' interest in the land contract was drawn, dated April 4, 1944, and signed by Eagles and witnessed by the Langes. A will was also drafted, as was a quitclaim deed pertaining to the same property from Mrs. Ollig back to Eagles. The will and quitclaim deed were apparently both signed on April 5, 1944, and both were witnessed by the Langes. Neither is included in the record on appeal, but at oral argument the quitclaim deed, which was in evidence in the court below, was presented by stipulation of counsel as an exhibit in the proceedings on appeal.

Defendant Eagles did not take the stand, but just before the defense closed its case Eagles' attorney offered a stipulation, which was accepted, that the defendant Eagles would not be called to the stand because he was practically deaf, but if he were to be called he would testify that he roomed and boarded with the Olligs on Pelkey avenue, but that

after they moved to the Schoenherr road property he lived in a trailer and ate out. The stipulation further stated that if called Eagles would admit that the Olligs put materials into the property to the extent of $1,715.06. And further it was stipulated that defendant Eagles would testify that there was an oral understanding between the parties that Mrs. Ollig could live in the house as long as she lived, and her husband with her incidental thereto, but upon her death Ollig was to vacate.

Mrs. Ollig died on September 25, 1945. Shortly after her death Eagles recorded the quitclaim deed. Eagles continued to live in the trailer and Ollig in the house on the same piece of property for about a year and a half until they quarreled, whereupon each ordered the other off the property, and the ensuing dispute led to the filing of this lawsuit.

The trial judge found that the quitclaim deed which plaintiff sought to set aside was properly executed and delivered and that the written instruments, namely, the assignment of the land contract by Eagles to Mrs. Ollig, and the quitclaim deed from her back to him, themselves constituted the understanding between the parties and refuted any claim of oral contract. The trial judge further found that there was no proof of fraud in relation to the execution of these instruments.

With the trial judge's finding of fact and conclusions of law pertaining to this issue, this Court agrees, there being ample evidence in the record to sustain them. This issue represents basically an attempt to establish title to land by proof of an oral contract in direct conflict with a written instrument of conveyance.

It is fundamental that in the absence of fraud such an attempt must fail. CL 1948, § 566.108 (Stat Ann 1953 Rev § 26.908).

At trial plaintiff sought a reference for an accounting which was denied by the trial judge. No showing of any very complicated accounts between these parties was made; and the trial judge was within his discretion in refusing such a reference, and in having the proofs taken before him.

The trial judge at the conclusion of proofs, however, likewise found that plaintiff had failed to sustain the burden of proof generally and ordered his bill of complaint dismissed—thereby resolving all issues raised in this litigation in favor of the defendant.

This Court believes the record justifies dismissal of the bill of complaint as to plaintiff in his capacity as administrator of his wife's estate. The trial judge found that her dealings with defendant were represented by the written instruments and that no proof of fraud in their execution had been produced; and the record justifies his holding. Further, it is obvious that Mrs. Ollig, individually, under the arrangement contemplated by the written instruments, had good consideration for whatever she put into the property in the expectation of acquiring the land and buildings in the event of defendant's death and that she acted with full knowledge of the facts.

This Court believes, however, that plaintiff's claim in his individual capacity stands upon another footing. This being a chancery case it is heard before the Supreme Court on the record *de novo,* and in this instance, aside from the general dismissal, without the benefit of any specific findings of fact from the trial judge. As we read this distinctly inadequate record it appears undisputed that plaintiff (with the assistance of his wife to an unascertained degree) built a house upon defendant's land. It appears undisputed that he did so in good faith and in reliance upon an assignment of a land con-

tract to his wife and in complete ignorance of her unrecorded quitclaim deed back to the defendant. From this record it likewise appears that defendant, having full knowledge of his own legal title, stood by and watched and acquiesced fully in plaintiff's construction of the house without at any point asserting his claim of ownership thereto until long after the house was built and a year and a half after Mrs. Ollig's death. It even appears, as far as this record is concerned, that his silence on this point continued during this last period for a year and a half subsequent to his own recording of the quitclaim deed.

Plaintiff claimed in his bill of particulars to have furnished building materials for the house to the extent of $1,715.06. Defendant at trial stipulated that "the Olligs" put in that sum.

Plaintiff's assertion that in building the house he mistakenly relied upon the belief that his wife had title to the land offers the only plausible commonsense explanation of his actions and stands undisputed by any testimony to the contrary tendered by defendant at trial.

On appeal plaintiff urges upon this Court a claim for "an equitable lien for the value of the improvements made in good faith by a party in possession under a mistaken claim of ownership where the true owner knew and consented to such improvements." On appeal defendant argues that at trial plaintiff did not raise the question which is now presented.

The record shows little time spent at trial by plaintiff on the issue phrased as he now presents it. The plaintiff did not testify at all as to the value of the improvements or the increased value of the land resulting therefrom. And the record does not show to what extent the issue was presented in argument.

Nonetheless this Court believes the issue was before the lower court. It was raised in plaintiff's

amended bill of complaint in paragraphs 5 and 6, and in paragraphs 3 and 4 of the prayer where plaintiff implies knowledge of the pertinent facts on the part of the defendant, alleges ignorance of them on the part of the plaintiff, and claims relief on the grounds of "unjust enrichment" arising from the circumstances. Defendant, as previously stated, stipulated at trial that "the Olligs" paid $1,715.06 for materials for the house, and further, the defendant, in a sworn petition which is a part of this record, represented the value of the buildings as $5,000.

Under these pleadings and on this record we believe that equity, having once taken jurisdiction of these proceedings, should determine all the rights of the parties. *Culver* v. *Avery,* 161 Mich 322; *Burgess* v. *Jackson Circuit Judge,* 249 Mich 558. See *Koontz* v. *Bay Circuit Judge,* 224 Mich 463.

This type of claim, where a party has placed improvements upon the land of another under mistaken belief as to title, has produced a vast amount of litigation in which courts have generally sought for equitable remedies without undue sacrifice of the statute of frauds. *Green* v. *Biddle* (1823), 8 Wheat (21 US) 1 (5 L ed 547); *Bright* v. *Boyd* (1841, CC Me), F Cas No 1875 (1 Story 478); *Bright* v. *Boyd* (1843, CC Me), F Cas No 1876 (2 Story 605); *Union Hall Association* v. *Morrison,* 39 Md 281; *Valle* v. *Fleming,* 29 Mo 152 (77 Am Dec 557); *Luton* v. *Badham,* 127 NC 96 (37 SE 143, 53 LRA 337, 80 Am St Rep 783).

And most States, including Michigan, have passed so-called "betterment" statutes giving the occupying claimant the right to compensation for the increased value resulting from his improvements where he held the property in good faith and under color of title and where the owner of the fee seeks to oust him in ejectment proceedings. CL 1948, § 629.43 *et seq.* (Stat Ann § 27.1956 *et seq.*). See,

also, *Whitehead* v. *Barker,* 288 Mich 19; *Taylor* v. *Hurd,* 293 Mich 425; *Boissoin* v. *Gillie,* 311 Mich 358.

The present case cannot be disposed of under the general line of occupying claimant cases cited, nor under the Michigan statute, since it is distinguished therefrom in 2 ways. First, plaintiff here seeks affirmative relief in equity rather than the set-off of his claim in the fee owner's action. Second, plaintiff, under the facts above, cannot be held to have acted under color of title or with adverse possession.

The question, therefore, may be phrased as follows: When an occupying claimant in good faith, but mistakenly, relied upon the belief that his wife had title to land and built a house thereon with the full knowledge and silent acquiescence of the actual owner and upon discovery brings suit in equity for an accounting for the value of his improvements, is a chancery court powerless to grant relief?

Common sense and common justice answer strongly "No"; and Michigan case precedent does likewise.

The question of granting affirmative equitable relief in these cases has apparently bothered many judges in many courts. Justice Story in *Bright* v. *Boyd, supra,* finally reversed his own holding in *Carver* v. *Jackson* (1830), 4 Pet (29 US) 1 (7 L ed 761).

See *Schleicher* v. *Schleicher,* 120 Conn 528 (182 A 162, 104 ALR 572) and annotation in 104 ALR 577; 14 RCL, Improvements, § 6, p 18; 27 Am Jur, Improvements, § 25 *et seq.,* p 279.

Our Court joined the minority amongst the 48 States on this issue in an opinion written by Mr. Justice CLARK for a unanimous bench in *Hardy* v. *Burroughs,* 251 Mich 578, which quoted Justice Story (pp 495, 496) with approval on page 581:

" 'To me it seems manifestly unjust and inequitable, thus to appropriate to one man the property and money of another, who is in no default. The argument, I am aware, is, that the moment the house is

built, it belongs to the owner of the land by mere operation of law; and that he may certainly possess and enjoy his own. But this is merely stating the technical rule of law, by which the true owner seeks to hold, what, in a just sense, he never had the slightest title to, that is, the house. It is not answering the objection; but merely and dryly stating, that the law so holds. But, then, admitting this to be so, does it not furnish a strong ground why equity should interpose, and grant relief?' "

The plaintiff in *Hardy* v. *Burroughs* built a house by sheer mistake and without semblance of title upon the wrong lot without knowledge or fraud on the part of the true owners. The Court there in reversing dismissal of the bill of complaint on motion said on page 581:

"If, upon the hearing, plaintiffs make a case for equitable relief, it will be proper to offer to defendants by decree the privilege of taking the improvements at the fair value found by the court, or to release to plaintiffs upon their paying the fair value of the lot found by the court, and this within a reasonable time limited by decree. If defendants decline or neglect to comply therewith, conveyance to plaintiffs upon payment made may be decreed."

While citing and relying upon the *Hardy Case, supra,* for its holding that in Michigan a plaintiff may seek affirmative equitable relief when mistakenly, but in good faith, he has improved the land of another to the unjust enrichment of the latter, we do not extend our present discussion beyond cases where the title owner had full knowledge of the improvement as it was being made.

As previously indicated, plaintiff here had neither color of title nor proof of adverse occupancy to support his claim. Defendant, in effect, asserts that ends the matter, relying on *Whitehead* v. *Barker, supra.* The well-considered opinion by Justice

MCALLISTER in that case is clearly distinguishable from the instant problem.

There plaintiff had married a widow who had owned a house and lived in it with her for 11 years and made considerable improvements and repairs. On her death her niece claimed the property under a deed given to her prior to her aunt's marriage to plaintiff. The niece had known of the repairs and had not mentioned the deed. Justice MCALLISTER held that in these circumstances her conduct did not induce the making of the improvements and that her silence was not inconsistent with honest conduct, pointing out the 11 years of benefit which plaintiff and her aunt had derived from the use of the improvements. Justice MCALLISTER indeed pointed out that a different conclusion would be reached where the fee owner encouraged the mistaken act and subsequently sought to enrich himself thereby. On the doctrine of equitable estoppel he said at page 26:

"It has been said that the right to compensation for improvements may arise by estoppel, even though the occupant is not one entirely in good faith, where the owner has by his conduct encouraged such occupant to make such improvements, or has so conducted himself while they were being made as to make it a fraud for him to take them without paying therefor."

We believe this paragraph accurately quotes the rule applicable to the present matter. Equitable estoppel preceded in the development of the law many of the remedial rules already discussed. It may be regarded as a part of the doctrine of unjust enrichment. (See Dawson, Unjust Enrichment, p 133.) Pomeroy on this point says:

"Owner Estopped from Asserting His Legal Title to Land—The most striking instance of the estoppel

recognized by courts of equity is that already described in a former paragraph (section 807), wherein by intentional misrepresentation, misleading conduct, or wrongful concealment a party may preclude himself from asserting his legal title to land, or from enforcing an encumbrance on or maintaining an interest in real estate. This doctrine was established in equity long before the modern rules concerning equitable estoppel by conduct had been developed; and its operation is somewhat more extensive than the effects produced by ordinary forms of estoppel. A person may not only be prevented from asserting his title or interest, he may even be compelled, at the suit of an innocent purchaser, to make good and specifically perform his representations. Fraud, actual or constructive, is the essential and central element." 3 Pomeroy, Equity Jurisprudence (5th ed), § 821, p 258.

American Jurisprudence in discussing estoppel says:

"In most of the cases in which the doctrine of estoppel has been adopted, the money of the party alleging the estoppel has been applied to the making of tangible improvements; and it is a rule almost of universal application that one who stands by and sees another purchase land or enter upon it under a claim of right and permits such other to make expenditures or improvements under circumstances which would call for notice or protest cannot afterward assert his own title against such person." 19 Am Jur, Estoppel, § 133, p 787.

The doctrine of estoppel has long been recognized by our Michigan courts. In *Smith* v. *O'Dell*, 240 Mich 185, 197, the Court said:

"A party who, having a right to property, sees another dealing with it inconsistent with that right and stands by without making objection while such acts are in progress may not subsequently complain."

In an earlier case still, *Truesdail* v. *Ward,* 24 Mich 117, 134, Justice Graves quoted from *Cairncross* v. *Lorimer,* 7 Jur (NS) 149 (3 LT 130):

"It is a universal law that 'if a man, either by word or by *conduct,* has intimated that he consents to an act which has been done, and that he will offer no opposition to it, although it could not have been lawfully done without his consent, and he thereby induces others to do that from which they otherwise might have abstained, he cannot question the legality of the act he had so sanctioned, to the prejudice of those who have so given faith to his words, or to the fair inference to be drawn from his conduct.' "

Finally in Seavey and Scott's Notes on section 42 of Restatement, Restitution, we find the following (p 31):

"If the owner of land remains silent although realizing that another is improving the land in the erroneous belief that it is his own, normally it is held that the owner is estopped either to deny title or, more usually, to deny the improver the right to recover for the value added."

See, also, *Olin* v. *Reinecke,* 336 Ill 530 (168 NE 676); *Gibson* v. *Herriott,* 55 Ark 85 (17 SW 589, 29 Am St Rep 17); *Brown* v. *Bowen,* 30 NY 519 (86 Am Dec 406); 27 Am Jur, Improvements, § 21, p 275; 14 RCL, Improvements, §.14, p 24; 104 ALR 577. *Contra, Kelly* v. *Kelly,* 293 Ky 42 (168 SW2d 339, 148 ALR 331).

We hold that defendant appellee's silence as to his own title and his acquiescence and assistance in the plaintiff's construction of this house serve to estop him from asserting his legal defenses to this suit.

We hold further that plaintiff in his individual capacity is entitled upon this record to a decree awarding him the reasonable value of the improvements he made to this land, excluding any contribu-

tion to the above made by his wife and by defendant, and set off by the reasonable rental value of the unimproved land which he used for the years he occupied it.

We hold further that the court under the doctrine of an implied contract may grant a lien upon the property for the value of the improvements as determined above. 4 Pomeroy, Equity Jurisprudence, § 1241, p 713.

The decree of the lower court is affirmed in part and reversed in part, and the case is remanded for the taking of such additional testimony as is required for the computations referred to above and the entry of a decree consistent with this opinion.

Neither party having prevailed entirely, no costs are awarded.

DETHMERS, C. J., and SHARPE, SMITH, BOYLES, KELLY, CARR, and BLACK, JJ., concurred.