BENTLEY v. CAM.

1. TAXATION—TAX TITLE—NOTICE OF RECONVEYANCE.
   Plaintiffs' grantors, hence, also plaintiffs, did not acquire valid title, where they purchased property at tax sale and never perfected title in that they failed to give or file the notices of right of reconveyance required by statute (CL 1948, § 211.73a).

REFERENCES FOR POINTS IN HEADNOTES
[1] 51 Am Jur, Taxation § 1117.
[2] 51 Am Jur, Taxation § 1107.
[3] 1 Am Jur, Adverse Possession §§ 25, 121, 122.
[4] 19 Am Jur, Estoppel § 2.
[5] 19 Am Jur, Estoppel § 87.
[6] 51 Am Jur, Taxation § 1137.

2. Same—Tax Sale—Redemption by Remaindermen.

> Defendants, remaindermen under deed from grantor grandfather who had conveyed to them subject to a life estate in defendants' father, were entitled to redeem from tax sale, where purchasers at tax sale had failed to perfect their title in that they had not given or filed the notices of right of reconveyance required by statute (CL 1948, § 211.73a).

3. Adverse Possession—Life Tenants—Remaindermen.

> The possession of land by the life tenant's stepdaughter and her husband during the lifetime of such life tenant with his consent was not adverse to remaindermen since they had no possessory rights while the life tenant was alive.

4. Estoppel—Benefits.

> An essential element of estoppel is that the party against whom it is raised has permitted the opposite party unwittingly to act to the former's benefit and the latter's disadvantage.

5. Same—Title to Real Estate—Fraud.

> Title to real estate may not rest on estoppel, in the absence of fraud.

6. Quieting Title — Remaindermen — Estoppel — Improvements — Delay.

> Remaindermen were not estopped from seeking to redeem from tax sale and undertaking to enforce their rights against grantees of life tenant after the death of the life tenant, where there is no showing defendants knew plaintiffs in suit to quiet title were making improvements on the property, and did not delay unduly in seeking redemption and decree of ownership under cross bill after death of life tenant, no injustice having resulted to the grantees of the life tenant by reason of payment of taxes since they had the use and occupancy of the premises all the while.

Appeal from Barry; McDonald (Archie D.), J. Submitted October 7, 1960. (Docket No. 41, Calendar No. 48,456.) Decided December 2, 1960. Rehearing denied January 9, 1961.

Bill by Joe Bentley and Clarsie B. Bentley against Christina Belle Cam, Clayton Ray Davis, and Floyd William Davis to quiet title. Cross bill for similar relief, seeking redemption from tax sale. Decree for plaintiffs. Defendants appeal. Reversed and decree ordered entered.

*Richard M. Bauer,* for plaintiffs.

*Yenner & Van Valkenburg (Wade Van Valkenburg,* of counsel), for defendants.

Dethmers, C. J. Defendants' grandparents conveyed the real estate in question to them, subject to a life estate in defendants' father, by a warranty deed, dated April 14, 1913, which was promptly recorded. The father moved from the land in 1921. In 1930 he married his second wife. She had a daughter by a previous marriage. That daughter and her husband were Beulah and Frank Francisco. In 1934 the Franciscos took possession of the land. About then defendants' father told his brother-in-law that he was going to let Francisco pay the taxes and have the farm. In 1938 Francisco purchased the land from the State of Michigan for the delinquent taxes for the years 1929, 1930, and 1932 and obtained a tax deed dated February 5, 1940. This tax title he never perfected, failing to give or file the notices of right of reconveyance required by statute. (CL 1948, § 211.73a [Stat Ann 1950 Rev § 7.119].) Francisco and wife continued to occupy the land and pay taxes on it from 1934 until his death in 1955. There is no showing that any of the above mentioned persons, all relatives, were other than fully aware of the fact that the defendants were the remaindermen under their grandparents' deed of 1913. Defendants' father, owner of the life estate, died in 1953. As already stated, Frank Francisco died in 1955. His wife, Beulah, stayed on the premises until 1957, when she deeded it to plaintiffs, husband and wife. She thereafter died in 1958. Plaintiffs made no investigation of Mrs. Francisco's title before purchasing the land from her.

In 1958 an abstract was made and plaintiffs then discovered the interests of defendants as remainder-

men and that the Franciscos had had no valid tax title. Plaintiffs then filed a claim, on that account, against the estate of Beulah Francisco, deceased, attaching thereto an affidavit by their attorney stating that the claim was based on the covenant of seisin contained in the deed from Mrs. Francisco to plaintiffs because of defects in the title.

After learning of plaintiffs' purchase, defendants applied to the auditor general of Michigan for a redemption certificate and received it. They then paid to the county clerk the sum authorized by the certificate for redemption. Plaintiffs refused to give a release and quitclaim to defendants.

Plaintiffs then filed the bill of complaint in this case, seeking to quiet title in themselves on the theory of adverse possession. Defendants filed an answer and cross bill, seeking redemption and decree of ownership in them. From decree for plaintiffs, defendants appeal.

The trial court held, properly, that under CL 1948, § 211.73a (Stat Ann 1950 Rev § 7.119), and the holdings in *McClure* v. *Knight,* 284 Mich 649, *Tuthill* v. *Katz,* 163 Mich 618, and *Brousseau* v. *Conklin,* 301 Mich 241, Franciscos and, hence, plaintiffs, had acquired no valid title under the mentioned purchase at tax sale, for reasons above stated. Accordingly, unless other reasons intervened, defendants would be entitled to redeem and to a release and quitclaim under CL 1948, § 211.141 (Stat Ann 1950 Rev § 7.199).

In considering plaintiffs' claimed rights through adverse possession by the Franciscos for more than the statutory period, the court observed that because defendants' father, the life tenant, also had been the stepfather of the Franciscos, defendants might well have considered or assumed that the Franciscos were on the land merely to enjoy the life estate of their stepfather. The court then proceeded on the

assumption that, therefore, the claim of adverse possession could not successfully be asserted by plaintiffs against defendants. The assumption was well founded. Defendants had no possessory rights in the land until the death of their father, the life tenant, in 1953. The possession of the Franciscos from 1934 until that time was in no sense adverse to defendants. *Porter* v. *Osmun,* 135 Mich 361 (3 Ann Cas 687). There was no adverse possession thereafter for the statutory period.

There was no showing that defendants knew of plaintiffs making the improvements on the property at the time they were made or that defendants were thereafter guilty of undue delay in seeking to redeem from the tax sale and undertaking to enforce their rights. The court held for plaintiffs, however, on the theory that defendants' failure to do anything to obtain possession at the death of the life tenant in 1953 and Mrs. Francisco's continued possession and payment of taxes until she sold to plaintiffs in 1957, followed by the possession of plaintiffs and their making of the improvements, all combined to work an estoppel against defendants' assertion of their rights to the premises. The court said:

"A person who knows the facts, and who, without objection permits another to make improvements or expenditures on, or in connection with, his property, or in derogation of his rights under a claim of title or right, will be estopped to deny such title or right to the prejudice of the other. 31 CJS, Estoppel, § 94, p 314; *Denler & Denler Land Company* v. *Eby,* 277 Mich 360; *Johnson* v. *Hogan,* 158 Mich 635 (37 LRA NS 889)."

In *Denler* this Court expressly stated that the case did not involve the conveyance of real estate by estoppel. Rather, plaintiff, in a suit for the balance due it as vendor in a land contract, was denied recovery thereof on the ground that it was estopped

by its conduct from disavowing a cancellation of the contract. In *Johnson* it was held that when a partner acquired title to real estate, with the intent of himself and his partners that it was to be held for the benefit of the firm, an agreement to such effect might be implied and that equity then would treat the land as an asset of the partnership. Mention has also been made of *Ollig* v. *Eagles,* 347 Mich 49.. There, plaintiff had built a house on land which he mistakenly believed to belong to his wife, not knowing that she had quitclaimed it to defendant by a deed never recorded. Defendant, knowing he had title, silently watched and even helped plaintiff build the house. After the wife's death, when the husband learned the facts, he sued, seeking title or compensation. This Court held defendant estopped, by his silence and helping to build the house, from asserting his legal defenses, and awarded plaintiff the reasonable value of the improvements to the land less reasonable rental for use of land. These cases are not in point. Here defendants did not, as in *Ollig,* silently watch or encourage plaintiffs in making the improvements, it not appearing that defendants knew of it; they were not, as in *Johnson,* holding title for the benefit of others by implied agreement nor under any contractual obligation to plaintiffs respecting the premises; they had not, as claimed in *Denler,* entered into an agreement which was inconsistent with or had terminated their rights later sought to be asserted. An essential element of estoppel, a party's knowingly permitting the opposite party to unwittingly act to the former's benefit and the latter's disadvantage, was not shown to exist here; neither can plaintiffs urge that, when they purchased and made the improvements, they were without notice of defendants' rights inasmuch as these appeared as of record. As for payment of taxes, through the years, by the Franciscos and

plaintiffs, no injustice to them results therefrom since they had the use and occupancy of the premises all the while.

This Court has adhered to the view that title to real estate may not, in the absence of fraud not shown here, rest on estoppel. *Bruun* v. *Hansen,* 281 Mich 362; *Nowlin Lumber Co.* v. *Wilson,* 119 Mich 406; *Huyck* v. *Bailey,* 100 Mich 223; *Wilson* v. *Muskegon, G. R. & I. R. Co.,* 132 Mich 469; *McVannel* v. *Pure Oil Co.,* 262 Mich 518.

Decree reversed. A decree may enter here in accord herewith, granting defendants relief as in their cross bill prayed, together with costs.

CARR, KELLY, SMITH, BLACK, EDWARDS, KAVANAGH, and SOURIS, JJ., concurred.