PAKULSKI v. LUDWICZEWSKI.

1. WILLS—CONTRACTS TO LEAVE PROPERTY—EVIDENCE—BREACH.
    Son *held*, not entitled to any rights under an alleged oral agreement whereby he was to have farm upon death of his parents if he would live thereon with them, work it and turn over to his father earnings received when not working farm as such agreement contemplated that son remain on the farm and continue to turn over earnings when not on it, where at such time he was living under circumstances raising presumption that any contribution he made to his parents on the property was gratuitous and where he thereafter left the property to live and work elsewhere, thereby breaching such alleged agreement.

2. INJUNCTION—SUMMARY PROCEEDINGS—CONTRACT TO LEAVE FARM—
.EVIDENCE.

In suit to restrain summary proceedings for repossession of a farm on ground that plaintiff's mother had orally agreed to leave it to him if he would return to it, work the land, pay the taxes and keep buildings in repair, such agreement and plaintiff's right to relief thereunder *held,* not established by a preponderance of the evidence where plaintiff occupied the farm at least eight years without securing a written confirmation of the promise, nor even for year after learning that mother had deeded farm to a daughter and son-in-law, and plaintiff failed to pay all the taxes.

3. CONTRACTS—EXCUSE FOR NONPERFORMANCE—HIGH TAXES.

Under alleged oral agreement whereby defendant mother was to leave property to plaintiff son if he would return to farm, work it, pay taxes and keep buildings in repair, fact that taxes were high during depression and plaintiffs were unable to carry the burden does not excuse their performance.

4. APPEAL AND ERROR — INJUNCTION — QUESTIONS REVIEWABLE — WEIGHT OF EVIDENCE—ESTOPPEL.

On review of decree in suit to restrain summary proceeding for repossession of farm, claimed by plaintiff under oral agreement with defendant grantor to leave farm if he would come and work it and pay for taxes and repairs thereon, and claimed by defendant grantees under a subsequent deed, Supreme Court gives particular attention to written lease between plaintiff and defendant grantees but does not determine whether plaintiff, by acknowledging a defendant grantee as lessor, estopped himself from challenging his title or asserting a superior title.

5. LANDLORD AND TENANT—FRAUD—ESTOPPEL.

In suit where very existence of relation of landlord and tenant is challenged on ground of fraud, rule that tenant may not question landlord's title has no application.

6. SAME—FRAUD—BURDEN OF PROOF—NEGLIGENCE.

In suit by plaintiff claiming farm under alleged oral agreement with widowed mother who had subsequently deeded it to plaintiff's sister and her husband, plaintiff did not sustain his burden of showing that he was fraudulently induced to sign a lease by defendants where he received a copy of the lease and notes for payment of rent and, if he was mistaken as to the legal significance of such papers, it was due to his own negligence.

7. IMPROVEMENTS—EQUITABLE LIEN—UNJUST ENRICHMENT.

An equitable lien for improvements placed on another's property by fraud, accident or mistake is given only under compelling circumstances to avoid unjust enrichment of the true owner by the person innocently making the improvements.

8. SAME—MEASURE OF COMPENSATION.

The measure of compensation for improvements placed on another's property by fraud, accident or mistake is not the amount of the expenditures on the property but the amount the land has been enhanced by reason of the repairs and improvements made upon it.

9. SAME—COLOR OF TITLE.

Normally, in order to recover for improvements an occupant must come upon the land under some "color of title" and then make outlays in the belief that the premises do or will belong to him.

10. SAME—EXPECTANCY OF TITLE—EQUITABLE LIEN.

Expectancy of title without color of title is insufficient to justify imposition of an equitable lien for improvements made by one person on another's property.

11. SAME—ESTOPPEL—COLOR OF TITLE.

Plaintiffs who left farm where they had been living with wife's folks and moved onto farm owned by husband's widowed mother under an alleged oral promise to leave it to him if he would come and work it and pay for taxes and repairs *held*, not to have made out a case of estoppel on part of such mother and other defendants to whom she had subsequently deeded the farm to refuse to pay for improvements made by plaintiffs, where plaintiffs failed to establish color of title.

12. SAME—EQUITABLE LIEN—BURDEN OF PROOF—BENEFITS.

Son and wife who had moved onto his widowed mother's farm because of her alleged oral promise to leave the farm to him if he would work it and pay for taxes and repairs thereon was not entitled to an equitable lien for improvements he may have made where he has failed to sustain his burden of showing existence of such agreement or that the improvements he made exceeded the benefit derived from the land by way of occupancy without rent.

13. INJUNCTION—EQUITY—REMOVAL OF PERSONALTY.

In suit to restrain summary proceeding because plaintiffs claimed defendant mother was to leave son farm if he would come

there, work it, and pay for taxes and repairs on it, where decree is rendered for defendant mother and her grantees, plaintiff son and wife are allowed a reasonable time within which to remove strawberry and rhubarb plants and their other personal property.

Appeal from Macomb; Spier (James E.), J. Submitted October 18, 1939. (Docket No. 84, Calendar No. 40,648.) Decided December 19, 1939. Rehearing denied February 14, 1940.

Bill by Vincent Pakulski and wife against Stanley Ludwiczewski and others to set aside a deed, for specific performance of an oral agreement to convey land and for an injunction restraining summary proceedings. Cross bill by Stanley Ludwiczewski and others against plaintiffs for a money decree. Decree entered denying specific performance but placing a lien on the property for the value of improvements. Defendants appeal. Plaintiffs cross-appeal. Modified and affirmed.

*Guy L. Frost,* for plaintiffs.

*Harry N. Grossman,* for defendants.

BUTZEL, C. J. Vincent Pakulski and wife filed a bill to restrain summary proceedings for repossession of premises before a circuit court commissioner whom they join as a party defendant with Julianna Pakulski, Vincent's mother, Josephine Ludwiczewski, his sister, and Stanley Ludwiczewski, the latter's husband. Vincent's claim is substantially as follows.

In 1912, when he was 12 years of age, his parents moved on a farm which they bought in Warren township, Macomb county. It consists of 55.83 acres. Vincent alleges that from 1912 to 1925, he lived and worked on the farm continuously with the exception

of periods during which he was employed by the Ford Motor Company and other corporations. $3,400 of his earnings were turned over to his father and used to make repairs on the farm. This money, he contends, was furnished in reliance upon his parents' promise, made in 1924 or 1925, that the farm should belong to him upon their deaths if he would live with them upon the farm and work the same and turn over to his father his earnings when not working on the farm. The agreement, if ever made, was exceedingly indefinite and was never reduced to writing.

In 1925, Vincent married. Difficulties arose between his wife and his mother and sister. As a result, he and his wife went to live on an 80-acre farm near Romeo, Michigan, which was owned by his wife's parents. The latter gave plaintiffs a deed to the Romeo farm, subject to two mortgages aggregating $4,000. They reserved a life estate in themselves, further conditioning the deed upon the obligation of plaintiffs to support the grantors in their old age with the necessities of life. The alleged agreement of 1924 or 1925 with Vincent's parents was breached when Vincent left their farm.

Sometime after Vincent's father died in 1928, Vincent claims that his mother promised to give him the farm if he would return to it, work the land, pay the taxes, and keep the buildings in repair. Vincent and his wife thereupon reconveyed the Romeo property to the wife's parents and moved to the Pakulski farm. They have continued to occupy the larger house on the premises ever since. Julianna Pakulski, Vincent's mother, has remained on the farm in a smaller house. Vincent testified that he brought cattle and agricultural machinery from Romeo, as well as $1,600 in cash, which sum, as well as all he could earn from the farm, he used for improvements, repairs and taxes for the farm. The alleged agree-

ment, as testified to by Vincent, made no express provision for the support of his mother. It is claimed that she expressed willingness to put the agreement in writing but this was never done.

In June, 1930, the mother mortgaged the property for $4,400 to her daughter Josephine and son-in-law Stanley Ludwiczewski to secure amounts which they had advanced to her from time to time. They claim that they have furnished more than $10,000 in all for the upkeep of the farm, taxes and support of the mother. The mortgage was discharged in September, 1936, when the mother gave a warranty deed of the farm to Stanley and wife. No provision was made in the deed for Julianna's support, and Stanley states that he and his wife agreed to support her and have thenceforth taken care of her to her apparent satisfaction.

It is Vincent's contention that he and his wife were entirely unaware that Stanley and Josephine claimed title to the property until late in 1937. Then he remonstrated with his mother about the deed which she had given them, but apparently did nothing further for a considerable period of time. Vincent signed a one-year lease, dated January 3, 1938, providing for a monthly rental of $35 for the farm, and in which he is the lessee and Stanley Ludwiczewski the lessor. He claims, however, that he was under the impression that Stanley was conveying to him an outright interest in 10 acres of the property and that he did not know that he was signing a lease. He gives a similar explanation in regard to two promissory notes for $210 each, representing the rentals under the lease, which were executed at the same time. When Vincent failed to pay the first note, due six months after date, Stanley served him with a seven-day notice to quit and began proceedings before a circuit court commissioner. Plaintiffs there-

upon brought this suit to restrain the proceedings and to obtain title to the farm, set aside the deed to Stanley and wife, to annul the lease and notes, et cetera.

. They claim here, as they did in the circuit court, that they are entitled to be regarded as owners of the farm because Julianna agreed that it should be theirs and because they have occupied it and worked it for more than eight years, paid taxes on it most of that time and have made valuable improvements, and furnished large sums for the support of Julianna. The trial judge declined to find that plaintiffs had ever been promised the land, but on the theory that they had improved it under a mistaken expectancy of ownership, awarded them a lien for $1,500, representing the value of the improvements so made, and allowed them to retain certain strawberry and rhubarb plants which they had planted on the premises. Both parties have appealed.

Plaintiffs are not entitled to any rights under the alleged agreement between Vincent and his father and mother in 1924 or 1925. If this arrangement was ever made, Vincent failed to carry it out; for according to Vincent's testimony, it clearly contemplated that he remain on the farm and continue to turn over his wages when away from the farm. Instead, he ceased working in the factory and after his marriage, left the property to go to Romeo. Before his marriage he was living at home with his parents under circumstances raising the presumption that any contribution he made to them or the property was gratuitous. No basis for plaintiffs' claim is thus disclosed. *Dehn* v. *Dehn,* 170 Mich. 407; *In re Engel's Estate,* 228 Mich. 385.

What is argued more seriously is that plaintiffs are entitled to the land because of the alleged promise by Julianna to Vincent in 1928 which caused him and

his wife to leave Romeo to return to his mother's farm. The fact that plaintiffs gave up their rights under a deed to the Romeo farm is a circumstance tending to support their version of the agreement, but the trial judge decided that the preponderance of the evidence did not establish an agreement of the nature claimed. He had the opportunity to see Vincent when he testified that such an agreement was made by his mother with him in the presence of his brother Alexander. He heard Alexander testify to the same effect. He then heard Julianna Pakulski, a woman of 74 years of age who spoke through an interpreter, brand this testimony as completely false and flatly deny that any promise had been made. After the testimony was in, the judge stated that he was not satisfied that the alleged oral agreement for the conveyance of the farm was ever consummated. We share that dissatisfaction and are not disposed to disturb his conclusion.

There are several factors which strongly confirm this result. Plaintiffs returned to the farm in 1928 and occupied it continuously without securing a written confirmation of the promise which they now allege. Even after they discovered that a deed had been given to Stanley and wife in 1937, they took no legal action to assert their alleged rights until August 29, 1938, when the bill of complaint was filed. So long as their possession of the land was not disturbed they seemingly did not complain about a wholly inconsistent claim of title. Furthermore, the agreement, as outlined by Vincent himself, provided for payment of taxes on the property. Admittedly this condition was not wholly met. The taxes were high during the depression years and plaintiffs were unable to carry the burden. This does not, however, excuse performance of what they agreed to do. *In*

*re Engel's Estate, supra.* On their own showing, they thus breached the alleged agreement.

What is even more important is that in January, 1938, Vincent signed the lease with Stanley. In a case involving testimony so conflicting, we are prone to give particular attention to a writing of this nature. Since the point has not been raised by appellants, we need not determine whether, by acknowledging Stanley as lessor, Vincent estopped himself from challenging his title or asserting a superior title in himself. See *Byrne* v. *Beeson,* 1 Doug. (Mich.) 179; *Hamilton* v. *Wickson,* 131 Mich. 71; *Strieby* v. *Bent,* 255 Mich. 439.

It is true that these settled principles of the tenant's estoppel would not apply in a case of fraud (*Sanford* v. *Lee,* 248 Mich. 496), but after reading the evidence on this point, we find that plaintiffs have not sustained the burden of proving any fraud. Although Vincent claims to have little learning, he was not unable to read. He signed his name to the lease and two promissory notes. His contention that he thought these three instruments would give him an outright title to 10 acres of the farm is not convincing. He admittedly received a copy of the lease which he could either have read slowly by himself or had another read to him. If he was mistaken about its legal significance, it was due to his own negligence rather than to Stanley's overreaching. *Sponseller* v. *Kimball,* 246 Mich. 255.

After holding that plaintiffs consequently did not establish the agreement under which they claim, the trial court found nevertheless that they left Romeo and came on the farm "under the belief and understanding on their part that they were to receive the property." The judge confessed his perplexity in trying to evaluate the improvements they subsequently placed on the property in that belief, as set

off against the rental value of the land. He took
$1,500 as a fair estimate and decreed an equitable
lien for that amount.

Whatever feelings of expediency and approximate
justice may have prompted this provision of the de-
cree, it cannot be defended from the challenge which
appellants make. An equitable lien for improve-
ments placed on another's property by fraud, acci-
dent or mistake is given only under compelling cir-
cumstances to avoid unjust enrichment of the true
owner by the person innocently making the improve-
ments. The measure of such compensation is not the
amount of the expenditures on the property but the
amount the land has been enhanced by reason of
the repairs and improvements made upon it. *Acker*
v. *Weadel,* 236 Mich. 374; *Schutz* v. *Kalamazoo Im-
provement Co.,* 284 Mich. 305. Normally, as we have
recently pointed out in *Whitehead* v. *Barker,* 288
Mich. 19, the occupant must come on the land under
some "color of title," and then make outlays in the
belief that the premises do or will belong to him.
Not having established the promise of Julianna to
give him the land, plaintiffs show nothing lending
color to any claim of ownership of the farm. They
demonstrate no more than their actual possession of
the farm and tolerance of this possession first by
Julianna and then by the other defendants as own-
ers of the property. Expectancy of title without
color of title is insufficient under the facts presented.
*Whitehead* v. *Barker, supra.* Nor, within the rule
of that case, have plaintiffs made out a case for
estoppel.

Finally, if all other barriers to compensation for
improvements were removed, plaintiffs have failed,
moreover, to establish in the record that their im-
provement to the land has exceeded the benefit they
derived from it. The trial judge made no findings

as to the value of the land at the beginning of plaintiffs' occupation of it; the only indication of the rental value of the property is that plaintiffs agreed to pay $35 a month and keep the premises in good repair in the lease that Vincent executed with Stanley. There is virtually no evidence as to the amounts and nature of plaintiffs' alleged expenditures save that they attached an unsworn bill of particulars to their pleadings and Vincent testified to the correctness of part of it. The merest survey of the items there set out indicates how uncertain, fanciful and inflated most of them are. Almost all of the figures are in multiples of $10. The extent of the enrichment of the owner has not been shown. A large proportion of the items asserted comprises Vincent's earnings turned over to his parents prior to 1929, which sums are irrelevant to the case under the view we take of it. Plaintiffs no doubt have made some improvements to the property but they have not shown that they exceeded the value which they derived from the land for more than nine years, during which they also occupied the house without payment of any rent. The burden of proving these items was on plaintiffs. They have not met it. See *Steggall* v. *Steggall,* 274 Mich. 402.

The decree must be modified to the extent that no lien shall be awarded in any amount. Plaintiffs were allowed by the lower court to retain and remove strawberry and rhubarb plants. It seems equitable to permit plaintiffs a reasonable time in which to vacate the premises and remove plants and their other personal property. Unless such time can be agreed upon between the parties prior to the decree, it will be therein fixed, and immediately thereafter and without preliminary notice to vacate, defendants may apply to the circuit court for writ of assistance

to remove said plaintiffs, or any persons holding under them, from the premises.

A decree will be entered in accordance with this opinion. Defendants will recover costs.

WIEST, BUSHNELL, POTTER, CHANDLER, NORTH, and McALLISTER, JJ., concurred. SHARPE, J., did not sit.