SNIDER v. DUNN.

OPINION OF THE COURT.

1. APPEAL AND ERROR—QUESTIONS REVIEWABLE—AGENCY—BREACH
   OF IMPLIED WARRANTY OF AUTHORITY.
   Claim by plaintiff, made for the first time on appeal, that de-
   fendant breached her implied warranty of authority by sign-
   ing an agreement of sale of realty for her mother, the owner
   of a life interest, when defendant had no authority to bind
   her mother will not be considered by the Court of Appeals
   because a case will not be reviewed on a theory which was
   neither pleaded nor raised below.

2. FRAUDS, STATUTE OF—LAND CONTRACTS—SIGNATURES.
   A contract for the sale of land must be signed by one lawfully
   authorized in writing to do so (CL 1948, § 566.108).

3. IMPROVEMENTS—EQUITABLE LIEN—KNOWLEDGE OF IMPROVEMENTS.
   Plaintiff who made improvements to defendants' realty in reli-
   ance upon a written agreement of sale signed by 1 of 3 de-
   fendants, who held 1/2 of a remainderman's interest subject to
   a life estate, held, not to be entitled to an equitable lien for
   his improvements, where the other 2 defendants holding a life
   estate and 1/2 of a remainderman's interest were not consult-
   ed about the sales agreement and had no knowledge of the im-
   provements.

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 726.
[2] 49 Am Jur, Statute of Frauds § 149 et seq.
[3, 4, 15–20] 27 Am Jur, Improvements § 30; 33 Am Jur, Liens § 21.
[5] 41 Am Jur, Pleading § 309 et seq.
[6] 3 Am Jur 2d, Agency § 70.
[7, 9, 10] 3 Am Jur 2d, Agency §§ 298, 299.
[8] 3 Am Jur 2d, Agency § 294.
[11, 14] 37 Am Jur 2d, Fraud and Deceit § 41 et seq.
[12] 36 Am Jur, Mistake.
[13] 27 Am Jur 2d, Equity § 34; 27 Am Jur, Improvements § 13 et
seq.

4. SAME—EQUITABLE LIEN—UNJUST ENRICHMENT.

An equitable lien for improvements placed on another's property by fraud, accident, or mistake is given only under compelling circumstances to avoid unjust enrichment of the true owner by the person innocently making the improvements.

5. PLEADING—AMENDMENT—CONFORMANCE TO PROOFS.

Amendment of pleadings to conform to the proofs is denied by the Court of Appeals.

DISSENTING OPINION.

LEVIN, P. J.

6. PRINCIPAL AND AGENT—WRITTEN AUTHORITY—SALE OF REALTY.

*An agent's authority to act in behalf of his principal must be in writing in order to bind the principal to an agreement of sale of realty signed by the agent purporting to act for his principal (CL 1948, § 566.108).*

7. SAME—BREACH OF IMPLIED WARRANTY OF AUTHORITY—EVIDENCE OF AUTHORITY.

*Plaintiff who offered to purchase realty from defendant, who signed an agreement of sale of realty purporting to act in behalf of her mother, the owner of a life estate in the property, was not obligated to seek evidence of defendant's authority, where defendant had no authority to bind her mother, in order to hold defendant for breach of implied warranty of authority (CL 1948, § 566.108).*

8. SAME—AGENT AS PARTY TO A TRANSACTION CONDUCTED BY HIMSELF.

*An authorized agent making a contract with another as agent for a disclosed principal does not become liable on the contract.*

9. SAME—BREACH OF IMPLIED WARRANTY OF AUTHORITY—TORTIOUS CONDUCT.

*An unauthorized agent who purports to make a contract for his principal is liable for breach of implied warranty of authority and, if a tortious misrepresentation of authority can be established, for the tort.*

10. SAME—LIABILITY OF AGENT ON CONTRACT—KNOWLEDGE OF PRINCIPAL'S INCAPACITY.

*One who acts as another's agent will be held liable when the person who, under the contract made by the agent, is to render*

*the performance does not have the capacity to do so and that fact is known to the one acting as agent and unknown to the party with whom he contracts.*

11. TORTS—FRAUDULENT MISREPRESENTATION.
*A misrepresentation in a business transaction is fraudulent if the maker knows or believes the matter to be otherwise than as represented.*

12. WORDS AND PHRASES—MISTAKE.
*Mistake means a state of mind not in accord with the facts.*

13. EQUITY—RESTITUTION—UNJUST ENRICHMENT—MISTAKE—LACK OF CARE.
*A person who has conferred a benefit upon another by mistake is not precluded from maintaining an action for restitution by the fact that the mistake was due to his lack of care.*

14. FRAUD—MISREPRESENTATION.
*Defendant, sophisticated in real estate transactions, who represented that she had authority to sell realty knowing she did not, who signed an agreement for sale of realty to plaintiff, and who encouraged plaintiff to believe the transaction would be consummated, was guilty of fraud.*

15. EQUITY—UNJUST ENRICHMENT—KNOWLEDGE OF BENEFITS.
*Generally, recovery in quasi-contract or unjust enrichment is refused where the party against whom it is sought neither procured nor was aware of the expenditures which represent plaintiff's loss.*

16. SAME—UNJUST ENRICHMENT—IMPROVEMENTS—AGENCY.
*Plaintiff, who in good faith mistakenly conferred a benefit upon 3 defendants by making improvements on defendants' realty in reliance upon a written agreement of sale signed by 1 of the defendants who held 1/2 of a remainderman's interest subject to a life estate, should be allowed to recover under a theory of unjust enrichment, where the defendant who signed was the agent of all the defendants to operate and maintain the realty notwithstanding that she acted in excess of her authority in agreeing to sell it.*

17. SAME—UNJUST ENRICHMENT—CONSENT.
*The doctrine of unjust enrichment is not based on contract or consent, but operates when there is no duty other than one imposed by the conscience of the law* ex aequo et bono.

18. SAME—IMPROVEMENTS—EQUITABLE LIENS.

> One entitled to the value of improvements made by him to realty may have an equitable lien on the realty against the owner for the enhancement in value.

19. SAME—IMPROVEMENTS—UNJUST ENRICHMENT—MISREPRESENTATION—EQUITABLE LIENS.

> Plaintiff, who improved the value of defendants' realty by $5,500 in reliance upon a written agreement of sale of realty signed by 1 of 3 defendants who fraudulently misrepresented her authority to bind another of the defendants who held a life interest, should be allowed to hold the defendant wrongdoer for the entire amount of the unjust enrichment; an equitable lien should be established on defendant wrongdoer's interest in the property.

20. SAME—IMPROVEMENTS—UNJUST ENRICHMENT—BREACH OF IMPLIED WARRANTY OF AUTHORITY—MISREPRESENTATIONS—AMENDMENT OF PLEADING.

> Plaintiff, who improved the value of defendants' realty in reliance upon a written agreement of sale of realty signed by 1 of 3 defendants who fraudulently misrepresented her authority to bind another of the defendants who held a life interest, should be allowed to amend his pleading from an action for specific performance to an action for breach of implied warranty of authority so as to recover the full value of his improvement from the defendant wrongdoer; but the case should be remanded so that the defendant wrongdoer may have an opportunity to meet the amended pleading with its new measures of damages.

Appeal from Wayne; Bowles (George E.), J. Submitted Division 1 November 8, 1967, at Detroit. (Docket No. 2,681.) Decided April 3, 1968. Rehearing denied May 20, 1968.

Complaint by Norman Snider against Sonia Dunn, Anna Dunitz, and Seymour Dunitz for specific performance of a contract or for damages. Judgment for defendants. Plaintiff appeals. Affirmed.

*Dingell, Hylton & Zemmol (Harold Goodman,* of counsel), for plaintiff.

*Josephson & Tennen (Norman L. Zemke,* of counsel), for defendant Sonia Dunn.

*M. H. Shillman,* for defendants Dunitz.

QUINN, J. In reliance on a written offer to purchase real estate in Wayne county and the alleged acceptance thereof by defendant Sonia Dunn as seller and defendants' refusal to perform, plaintiff filed complaint for specific performance or in the alternative for money damages. A nonjury trial resulted in judgment of no cause of action and plaintiff appeals.

Plaintiff was admitted to the practice of law in 1921 and practiced law until 1950, during which time he closed a good many real estate transactions. For reasons of health, he withdrew from the practice of law about 1950 and entered the real estate business, *i.e.,* purchasing residential property to recondition and modernize for resale.

On August 21, 1965, through Benjamin Rich Realty Company, plaintiff offered in writing to purchase the property in question for $3,800 and deposited $100 on such offer with the broker. The property was not listed for sale with the broker. On August 25, 1965, acceptance of the offer, amended as to amount to the sum of $4,150, was executed by "Sonia Dunn P.a. for Anna Dunitz", although Sonia Dunn had no written authority to act for Anna Dunitz. The evening of the same day, plaintiff was notified of such acceptance by the broker. August 28, 1965, plaintiff received a policy of title insurance which disclosed that the State of Michigan was the owner of the premises, subject to the interest of Anna

Dunitz, as to a life estate and remainder to Sonia Dunn and Seymour Dunitz. The property had been vacant for some time and had been vandalized. The evening of August 25, 1965, plaintiff was notified of further vandalization to the property, and August 27 or 28, 1965, he commenced repairs to stop further vandalizing. These repairs continued until March 4, 1966.

There were further negotiations to close the transaction, and about 2 weeks after August 21, 1965, plaintiff offered an additional $1,750 to the purchase price. It is disputed on the record whether Sonia Dunn ever unconditionally accepted any of plaintiff's offers, but the sale was never consummated, and October 8, 1965 plaintiff filed the complaint.

On appeal, plaintiff does not question the trial court's denial of specific performance but contends that defendant Sonia Dunn is liable individually for damages on theory of breach of implied warranty of authority by an unauthorized agent. This theory was neither pleaded nor raised below, and it is not before this Court. *Dwelley* v. *Tom McDonnell, Inc.* (1952), 334 Mich 229. If this theory were before this Court, plaintiff could not benefit by it. CL 1948, § 566.108 (Stat Ann 1953 Rev § 26.908) requires that a contract for the sale of land must be signed by one lawfully authorized in writing to do so. It is conceded Sonia Dunn had no such authority from Anna Dunitz or Seymour Dunitz. No inquiry was made as to the authority of Sonia Dunn, and plaintiff was content to rely on the broker's representation that Sonia Dunn had such authority and on the alleged representation by Sonia Dunn that she had such authority. The signature disclosed Sonia Dunn's purported principal; plaintiff knew Sonia Dunn was acting for others and she cannot be personally liable unless she agreed to be. *Hall*

v. *Encyclopaedia Brittanica, Inc.* (1949), 325 Mich 35. No such agreement appears here.

Plaintiff next claims he is entitled to an equitable lien for the improvements he placed on the premises. With respect to defendants Anna and Seymour Dunitz, such claim is untenable. The record does not disclose that Sonia Dunn ever consulted them about the purchase agreement nor that they acquiesced in the negotiations for purchase. They had no knowledge of the repairs made by plaintiff. There is no equitable basis for granting plaintiff the lien he seeks as to them when plaintiff knew at the time he commenced repairs of the record title interest of Anna and Seymour Dunitz.

In *Pakulski* v. *Ludwiczewski* (1939), 291 Mich 502, the Supreme Court stated the basis for an equitable lien:

"An equitable lien for improvements placed on another's property by fraud, accident or mistake is given only under compelling circumstances to avoid unjust enrichment of the true owner by the person innocently making the improvements."

The record before us establishes neither accident nor mistake, and the arguable fraud of Sonia Dunn is not established by clear, satisfactory, and convincing proof. *Youngs* v. *Tuttle Hill Corporation* (1964), 373 Mich 145. In addition, the record does not establish that plaintiff innocently made the improvements.

Affirmed, with costs to defendants. Plaintiff's motion to amend to conform to proofs is denied.

J. H. GILLIS, J., concurred with QUINN, J.

LEVIN, P. J. (*dissenting*). The property was owned by Anna Dunitz (life tenant) and her chil-

dren, Seymour Dunitz and Sonia Dunn (remainder-
men). Plaintiff agreed to buy the property under
an agreement of sale which was signed for the
seller:

"Sonia Dunn P.a. for Anna Dunitz".

Plaintiff's complaint sought specific performance
and, if that failed, damages. Plaintiff was unable
to prove that Sonia Dunn had been authorized to
sell the property for the other owners, and specific
relief was, therefore, denied. Plaintiff then sought
to impose an equitable lien or constructive trust
in aid of his claim that the defendants were obliged
to reimburse him for the amount the value of their
property had been enhanced by plaintiff's expendi-
tures in repairing their property. The plaintiff
asserted that the defendants had been unjustly en-
riched in that amount.

Following the conclusion of the proofs, the trial
judge wrote the parties stating his then view of
the matter:

"To allow the parties to remain where they are
now would be unjust to the plaintiff who, though
not innocent, was encouraged to believe by Sonia
Dunn and Benjamin Rich that the transaction would
be consummated. Accordingly, money damages will
be given as against all defendants who will receive
a benefit from the improvements made by the plain-
tiff. The measure of damages is not the cost of the
repairs and improvements to the plaintiff, but the
enhancement of the value of the property, that is,
the difference between the value of the property
after the improvement and the value of the property
before the improvement."

The trial was reopened and evidence was intro-
duced concerning the enhancement in value of de-
fendants' property resulting from plaintiff's repairs.

The trial judge found the enhancement in value was $5,500. However, he declined to allow plaintiff relief, not because of any fact finding adverse to the plaintiff, but because he concluded, as a matter of law, plaintiff had not shown himself entitled to restitutionary relief. This Court affirms for reasons in part the same and in part dissimilar to those advanced by the trial judge.

The trial judge found by and large for the plaintiff, *viz.*,

—the agreement under which plaintiff agreed to purchase and Sonia Dunn for the seller agreed to sell the property was entered into after lengthy negotiations;

—a few days after agreeing to purchase the property, plaintiff entered the premises and caused extensive repairs to be undertaken in an effort to stop further vandalizing of the property he had obligated himself to purchase;[1]

—within a few days after the repairs were started a title commitment was received showing title in the State of Michigan for default of taxes and showing the interests of Anna and Seymour Dunitz and Sonia Dunn;

—Sonia Dunn refused to close. The broker arranged for a meeting of the parties. Sonia Dunn failed to appear as promised. Another meeting was arranged which she did attend. She had learned of the repairs made by the plaintiff; she asserted that the repairs adversely affected her ability to settle a claim arising out of a fire which, prior to the execution of the agreement of sale, had damaged part of the property. After extended negotiations plaintiff agreed to pay, in addition to the $4,150

---

[1] Plaintiff testified it was his experience that when repairs begin vandalism ceases.

purchase price stated in the agreement of sale, an additional $1,750;[2]

—Sonia Dunn had not "tricked" the plaintiff into making and completing the improvements. However, at no time during these "difficult negotiations" did Sonia Dunn tell the plaintiff to discontinue the repairs. She gave permission to heat the premises to prevent pipes from freezing. At least two different dates were set for closing with plaintiff or his representatives appearing and with defendant Sonia Dunn failing to do so. Plaintiff's expectation that he would close the transaction satisfactorily and take title was "genuine and sincere";

—all parties to this litigation are sophisticated in business matters. Plaintiff is an attorney actively engaged in the purchase and sale of real estate. Sonia Dunn deals in real estate and has acted for herself and her mother on a number of transactions. Sonia Dunn had operated and managed this property. Sonia Dunn was not authorized in writing to sell the property for her mother and brother;

—the repairs undertaken by the plaintiff cost $4,500.14.

1.

Plaintiff knew within a few days after he started repairs that Seymour Dunitz, Sonia Dunn and the State of Michigan had interests in the property and that the record title was not vested in Anna Dunitz

---

[2] Plaintiff testified that he agreed to pay the $1,750 under the following circumstances. Sonia Dunn asserted that her fire loss was $4,000. She filed a claim with her insurance company for $2,513.25, on which the insurer ultimately paid $1,702.15. Plaintiff agreed to add $1,750 bringing her total recovery in respect to the insured loss to $3,452.15. The plaintiff and the real estate broker testified that Sonia Dunn accepted the proposed compromise of her claim that plaintiff's repairs had frustrated her ability to deal with the insurance company, and that she promised to close as soon as she had redeemed the property from the State of Michigan by paying the taxes in default.

alone.  There is not, however, any record evidence
for the trial judge's finding that plaintiff *knew* Sonia
Dunn acted without authority in selling the property.

Not infrequently buyers find reflected in a title
commitment interests other than those for which they
have signatures on an agreement of sale.  Ordinarily,
the necessary missing signatures are obtained and
the transaction closes.  Particularly where, as here,
the outstanding interests were those of the State
for unpaid taxes, of a son, and of a daughter who
signed for her mother, plaintiff was not bound to
assume that this litigation was about to become
his lot.  While Sonia Dunn's authority had to be in
writing to bind her mother or brother and without
evidence of such authority plaintiff must have failed,
as he did, in any effort to obtain specific relief,
plaintiff had no obligation to inquire concerning,
or to seek evidence of, Sonia Dunn's authority to
hold her on the implied warranty and representa-
tion of authority which flows from her purporting
to act for her mother.

In all events, it is not claimed plaintiff knew of
Sonia Dunn's lack of authority *when he contracted
with her.*

2.

As a corollary to the general rule that an author-
ized agent is not liable on a contract he makes for
a disclosed principal,[3] an unauthorized agent is
liable for breach of implied warranty of authority[4]
and, if a tortious misrepresentation of authority
can be established, for the tort.[5]  As an extension of
the same principles, one who acts as another's agent
will be held liable when the person who, under the

---

[3] Restatement, Agency, Second, § 320, p 67.
[4] Restatement, Agency, Second, § 329, p 81; *Newberry* v. *Slafter*
(1894), 98 Mich 468, 471; *Brusslan* v. *Larsen* (1967), 6 Mich App
680, 686.
[5] Restatement, Agency, Second, § 330, p 86.

contract, is to render the performance does not have the capacity to do so and that fact is known to the one acting as agent and unknown to the party with whom he contracts.[6]

If one sells property he does not own, he assumes the risk of not being able to deliver.[7] "He who sells what isn't his'n, must make it good or go to prison."[8] Had Anna Dunitz rather than the unauthorized agent, her daughter Sonia Dunn, signed the agreement of sale, Anna Dunitz could have been held for nonperformance even though she did not expressly agree to procure deeds from the remaindermen, her children, Sonia Dunn and Seymour Dunitz. Since Sonia Dunn was not authorized, and the imperfection in Anna Dunitz's title was known to Sonia Dunn and unknown to the plaintiff when he contracted, Sonia Dunn is liable for plaintiff's damages.

Sonia Dunn's testimony that she had never been authorized by her mother to sell the property established her misrepresentation of authority as tortious and fraudulent.

"A misrepresentation in a business transaction is fraudulent if the maker * * * knows or believes the matter to be otherwise than as represented". Restatement, Torts § 526, p 63.

However, when plaintiff failed to obtain specific performance, he did not claim damages from Sonia Dunn on the theories that she was guilty of fraudulent misrepresentation and breach of implied war-

---

[6] Restatement, Agency, Second, § 348, comment e, pp 114, 115; Restatement, Agency, Second, § 332, p 89; see, also, Restatement, Agency, Second, Appendix, reporter's notes to § 332.   Contrast Restatement, Agency, Second, § 329, comment f, pp 83, 84; Cheda v. Grandi (1950), 97 Cal App 2d 513 (218 P2d 97); Robinson v. Pattee (1949), 359 Mo 584 (222 SW2d 786).

[7] Robinson v. Pattee, supra.

[8] A paraphrase of "He who prigs what isn't his'n, when he's cotched 'll go to prison," by "Hoppy" Webb on the authority of Lord William Lennox.—Reporter.

ranty of authority.   Rather, the plaintiff continued
to focus on the 3 defendants together and sought
damages for unjust enrichment and declaration of
an equitable lien and constructive trust.

3.

The majority state that the record establishes
"neither accident nor mistake, and the arguable
fraud of Sonia Dunn is not established by clear,
satisfactory and convincing proof."   To the contrary,
the record is clear the plaintiff did act under a mis-
take.   Surely he did not intend to improve the prop-
erty for the benefit of the defendants.

"Mistake means a state of mind not in accord with
the facts."   Restatement, Restitution, § 6, p 29.

Plaintiff repaired the property in the mistaken be-
lief he had an enforceable agreement for its pur-
chase.   The trial judge found the plaintiff sincerely
believed the transaction would close, that Sonia
Dunn encouraged him to believe it would, and his
actions were in good faith.   That the defendant
might have avoided his mistake by inquiry into the
agreement's enforceability, that his conduct may
have been negligent, does not bar his action seeking
to recover the unjust enrichment of the defendants
flowing from his mistake.

"A person who has conferred a benefit upon
another by mistake is not precluded from maintain-
ing an action for restitution by the fact that the
mistake was due to his lack of care."   Restatement,
Restitution, § 59, p 232.[9]

_____

[9] Plaintiff, although an attorney, is not required to view his fel-
low man or woman with suspicion.   He may proceed on the assump-
tion that those with whom he deals are acting honestly, and rely
on their personal responsibility.   He takes certain risks in doing so.
If he is mistaken, his remedies against those who did not participate
in fraudulent conduct are, as will appear, limited.

In *Underhill* v. *Rutland R. Co.* (1916), 90 Vt 462 (98 A 1017), the plaintiff recovered for the unjust enrichment of the defendant resulting from improvements plaintiff made following dealings with defendant's agent, who had agreed, although not authorized to do so, to lease to the plaintiff the property plaintiff thereafter so improved. The court said (p 1021):

"The making of the agreement being within the power of the party sought to be charged, the fact that it was entered into by an agent without authority will not prevent an application of this doctrine. The failure of the plaintiff to ascertain the extent of the agent's authority affords no reason for saying that the defendant shall be allowed to enrich itself at the plaintiff's expense."

I find nothing arguable about the fraud of Sonia Dunn.[10] She represented she had authority to sell the property knowing she did not. While she testified she communicated to the broker that her signature for her mother as seller on the agreement of sale was only preliminary to discussions with her family and she did not intend by her signature to conclude a transaction, the trial judge found Sonia Dunn signed after extensive price negotiations. He also found she encouraged plaintiff to believe the transaction would be consummated. Sonia Dunn, found by the trial judge to be sophisticated in real estate matters, would have us believe she signed the agreement simply as a display of penmanship. The trial judge did not, nor do I, credit such testimony.

---

[10] The trial judge found that Sonia Dunn had not "fraudulently induced plaintiff to continue the negotiations". In his interlocutory letter to counsel he said she "encouraged" the plaintiff to believe the transaction would be consummated. Fraud is an unpleasant word. Here the fraud alleged and proved was Sonia Dunn's knowing misrepresentation of authority. Whether one dubs Sonia Dunn's conduct *after* the agreement was signed on the basis of that misrepresentation as "fraudulent inducement" or mere "encouragement" does not affect her responsibility for her fraud in contracting.

The trial judge concluded that, as a matter of policy, recovery from an owner for improvements to his property should not be allowed where the owner did not have knowledge the improvements were being made and the one making the improvements had "neither title nor color of title, nor good faith belief that he did".

The "color of title" limitation, a by-product of the betterment acts,[11] does not apply where, as here, the action is for restitution on the ground of mistake.[12] The plaintiff's good faith in the matter, a factor mentioned in *Ollig* v. *Eagles* (1956), 347 Mich 49,[13] was here found as a fact by the trial judge. As in *Hardy* v. *Burroughs* (1930), 251 Mich 578, and the other cases cited in footnote 12, plaintiff here made the improvements by mistake. Unlike *Ollig* v. *Eagles, supra,* the other true owners, Anna and Seymour Dunitz, are not estopped by their conduct, but estoppel is not essential; it was not present in *Hardy* v. *Burroughs, supra, Rzeppa* v. *Seymour* (1925), 230 Mich 439; or *McCrary* v. *Shields* (1952), 333 Mich 290.[14]

---

[11] *Ollig* v. *Eagles* (1956), 347 Mich 49, 59. The former statutory provision allowing an occupant dispossessed in an ejectment action to recover in that action for improvements made by him allowed such recovery where the "peaceable occupation" was for 6 years preceding the ejectment action, or if such occupation was for less than 6 years, where it was "under a color of title and in good faith." CL 1948, § 629.44 (Stat Ann § 27.1957). It is noteworthy that the superseding court rule, GCR 1963, 754.5, does not express any limitation based on length of occupation or color of title, but simply provides that recovery cannot be had for improvements made in "bad faith." See committee notes reprinted as annotation to Stat Ann Court Rules, p 409.

[12] *Ollig* v. *Eagles, supra; Rzeppa* v. *Seymour* (1925), 230 Mich 439; *Hogerheide* v. *Hickey* (1966), 2 Mich App 580, 584. Similarly, see *McCrary* v. *Shields* (1952), 333 Mich 290; *Hardy* v. *Burroughs* (1930), 251 Mich 578.

[13] In *Ollig* v. *Eagles, supra,* the plaintiff had neither color of title nor a good faith belief that he did, but, nevertheless, was found to have acted in good faith.

[14] *Hogerheide* v. *Hickey* (1966), 2 Mich App 580, is distinguishable because in that case neither mistake nor estoppel was shown. In *Whitehead* v. *Barker* (1939), 288 Mich 19, 25, and *Pakulski* v. *Ludwiczewski* (1939), 291 Mich 502, 511, the plaintiffs, who un-

Claimants who, following dealings with a principal's purported but unauthorized agent, conferred benefits by mistake upon the principal have in a number of cases recovered from the principal to the extent of the principal's unjust enrichment.[15]

---

successfully sought an equitable lien for improvements, had occupied the property so improved for extended periods of time without paying compensation for such use and, thus, there was no *unjust* enrichment.'

[15] In *Beacon Homes, Inc.*, v. *Holt* (1966), 266 NC 467 (146 SE2d 434), the plaintiff recovered damages to the extent of the defendant's unjust enrichment, measured by the increase in value of defendant's property resulting from improvements mistakenly placed there by the plaintiff without defendant's knowledge, but which defendant refused to permit plaintiff to remove upon learning of their completion. Plaintiff had constructed the improvements in good faith pursuant to a contract with defendant's purported but unauthorized agent.

In *First National Bank of Las Vegas* v. *Oberne* (1886), 121 Ill 25, (7 NE 85), the agent was authorized to draw checks on the principal's Las Vegas bank account with plaintiff bank, to which account the principal from time to time made deposits. The principal was the defendant in this lawsuit. The agent without authorization discounted a note made to the principal's order with the plaintiff and deposited the funds received to the principal's bank account with plaintiff and withdrew such funds in part for the benefit of the principal's business. Restitution was allowed to the extent of the benefit obtained by the principal, even though the principal had no knowledge of the deposit or withdrawal and the result reached by the court defeated the control of expenditures which the principal had attempted to effect by controlling deposits to the account. Accord: *Duffy* v. *Scott* (1940), 235 Wis 142 (292 NW 273, 192 ALR 487). See, also, Annotation: Liability of one who received benefit of loan made to another who, without authority, professed to act for him, 129 ALR 493, for cases both for and against the holding in *Duffy* v. *Scott, supra.*

In *Seifert* v. *Union Brass & Metal Manfg. Co.* (1934), 191 Minn 362 (254 NW 273), recovery based on the theory of unjust enrichment, in the form of rescission, was ordered in favor of a purchaser, because collateral promises made by the seller's agent in excess of his authority had not been performed. Accord: *Rackemann* v. *Riverbank Improvement Company* (1896), 167 Mass 1 (44 NE 990).' Similarly, see *Underhill* v. *Rutland R. Co., supra.*

Precedents concerning unjust enrichment recoveries for benefits conferred other than in the form of land improvements are here relevant. See Dawson, Unjust Enrichment, p 23: "If restrictions are to be imposed on the remedy they should rest on the grounds for awarding relief, not on the form the gains assume." Compare Restatement, Restitution, §§ 15–17 with §§ 40–42. See, also, *Farmers National Bank of Bloomsburg* v. *Albertson* (1964), 203 Pa Super 205 (199 A2d 486, 489). That among grounds for restitution is "invalidity of an intended bargain for failure to comply with formal requirements or through want of authority in one party to make or perform it", Dawson, Unjust Enrichment, p 118. Also, see "Volunteers", pp 127–144.

Ordinarily, recovery in quasi-contract or unjust enrichment is refused where the party against whom it is sought neither procured nor was aware of the expenditures which represent plaintiff's loss. As a general limitation, that makes sense.[16] One should not be obliged to pay for undesired benefits thrust upon him. There are, however, situations where that which in another case might be an undesired benefit appears, as in this case, to be in fact a benefit much desired, one which relieves the defendant (who would keep plaintiff's expenditures without payment if allowed to do so) from making fundamentally the same expenditures himself.

When the agreement of sale was signed, the property plaintiff agreed to purchase was boarded up and untenanted. A fire had occurred. Sonia Dunn asserted the loss was $4,000. Doors, windows, bathrooms and other parts of the house had not been vandalized. The building was not habitable.

We need not fear, on the facts of this case, that allowance of recovery against all 3 defendants would establish a precedent for recovery by volunteers for unwanted benefits. It was conceded that Sonia Dunn had been authorized by her mother and brother to operate and maintain the property. Instead of making the necessary repairs, Sonia Dunn found it more expedient, whether authorized to do so or not, to agree to sell the property to the plaintiff. Thereafter, she continued to negotiate with the insurance company. After plaintiff started repairs in an effort to prevent further vandalizing of the property he had agreed to purchase, Sonia Dunn announced she would not close because the repairs interfered with her ability to prove her insurance loss. For that reason, not because she was unauthor-

---

16 For authority showing that it is not an absolute rule, see authorities cited in footnote 15 and Restatement, Restitution, ch 5, pp 461–491.

ized to sell, she said she would not close. Plaintiff thereupon was constrained to offer an additional $1,750 to conclude the matter. During all this period the plaintiff was making repairs Sonia Dunn and her family would have had to make to restore the property to rentable condition, all of which she knew and made no effort to stop.

In determining whether a particular enrichment is an unjust one for which recovery should be allowed, we look at the whole picture. What clearly emerges here is that following dealings with one defendant, who was the agent of all the defendants notwithstanding she acted in excess of her authority, plaintiff, in good faith, mistakenly conferred a real and desired benefit on all the defendants. The doctrine of unjust enrichment is not based on contract or consent. It operates where there is no duty, other than one imposed by the conscience of the law *ex aequo et bono*.[17] The simple principle, formulated centuries ago, oft-quoted, recently by our Supreme Court in *Ollig* v. *Eagles, supra*, p 53, may properly be here applied:

" 'For this by nature is equitable, that no one be made richer through another's loss.' "

The trial judge found the enhancement in value resulting from plaintiff's repairs to be $5,500. It may be that this case should be remanded for a more careful determination of the value of the repairs to the defendants Anna Dunitz and Seymour Dunitz.[18]

---

[17] *Matarese* v. *Moore-McCormack Lines, Inc.* (CA 2, 1946), 158 F2d 631, 634; *Underhill* v. *Rutland R. Co., supra,* p 1021; 4 Pomeroy's Equity Jurisprudence (5th ed), § 1238.

[18] While it is unlikely that plaintiff, a professional with his own crews of workmen and warehouse of materials, was extravagant in his expenditures, since he was rehabilitating for resale with FHA or VA financing he may have made improvements not necessary to market the property conventionally or to retain it for rental. The trial judge as the trier of fact has a range of discretion in deciding

The plaintiff is entitled to the security of an equitable lien for the amount defendants owe him. While at one time such a lien may have been allowed only as a condition to granting equitable relief sought by the true owner against the party making the improvements,[19] in Michigan it is now established that the party making improvements may in a proper case maintain an independent equitable action against the owner for the enhancement in value and have an equitable lien therfor.[20]

4.

Even if it is thought plaintiff cannot recover for unjust enrichment from Anna and Seymour Dunitz because they were not aware the repairs were being made, that should not impede recovery against Sonia Dunn who did know they were being made. The application of the quasi-contractual, unjust enrichment theories to Sonia Dunn standing alone does, as the trial judge observed, present certain conceptual difficulties. Ordinarily such recoveries are allowed only against those enriched, and the amount of the enrichment is the measure of recovery.

Here Sonia Dunn, the remainderman, personally retained only part of the enrichment. However, that does not represent an insurmountable obstacle. The history of unjust enrichment has been the elimination of just such supposed limitations which, while sound in some cases, should not be regarded as governing universally.

Sonia Dunn created the situation with which we are confronted. By her action a benefit was conferred on others and herself. The plaintiff's loss and their enrichment is not affected by the division of the

the amount of the enrichment it would be unjust for the defendants to retain without compensation.
[19] Pomeroy, Equity Jurisprudence (5th ed), § 1241, p 715.
[20] *Ollig* v. *Eagles, supra,* p 65; *Hardy* v. *Burroughs, supra,* p 580.

enrichment. In signing the agreement, knowing she thereby exceeded her authority, she committed the tort. of fraudulent misrepresentation. Sonia Dunn was fully aware she and natural objects of her bounty were obtaining a benefit from the repairs undertaken by the plaintiff. Merely because she did not personally retain the full benefit of her tortious conduct, and others obtained the rest, does not make her any less responsible for what occurred.[21] The measure of restitutionary recovery is still the amount of the enrichment. Under the circumstances of this case, at least Sonia Dunn should be held for the entire amount of the unjust enrichment, determined by the trial judge to be $5,500, and an equitable lien should be established for that amount on her interest in the property.[22]

In *Clement* v. *Rowe* (1914), 33 SD 499 (146 NW 700), plaintiff conveyed his farm to a corporation of which the defendant was secretary on defendant's oral agreement to buy for $16,000 the stock issued to plaintiff by the corporation in exchange for the farm should the corporation fail to pay a 7% dividend annually. The defendant successfully asserted the statute of frauds when the plaintiff sought to enforce the oral agreement. The court considered earlier cases allowing recovery in *quantum meruit* or *quantum valebant* where the defendant himself had received the benefit of the invalid promise, and extended the principle of those cases to the one then before the Court ordering recovery not of $16,000, but of the value of the farm at the time of conveyance (p 703):

---

[21] Restatement, Agency, Second, Appendix, reporter's notes to § 348.

[22] The amount of the recovery against Sonia Dunn individually need not be, and should not be, reduced to the amount of benefit to her remainderman's interest, but the majority do not allow recovery even for that lesser amount.

"Nor should he [the defendant] be permitted, because he did not receive the farm, to assert the statute as against a claim for the recovery of the value of the property at the time of the trade. The plaintiff had irrevocably surrendered the farm relying upon defendant's promise. Defendant must therefore put him back as nearly as possible in *status quo.*"

In *Clement* v. *Rowe, supra,* the plaintiff relied on the defendant's unenforceable promise, and a corporation of which the defendant was secretary received the benefit. In the instant case, Snider parted with the repair money in reliance upon un enforceable agreement, based on Dunn's representation and warranty concerning her authority; defendant Dunn, her mother, and her brother received the benefit.

Plaintiff asks us to allow him to amend so that he can obtain on the law side full recovery from Sonia Dunn for breach of implied warranty of authority and misrepresentation of authority. My colleagues deny that motion. I would allow it, but remand so that Sonia Dunn may have an opportunity to meet the new theory with its new measures of damages.[23]

Having sought equitable relief, plaintiff may have become completely mesmerized with the equitable lien and constructive trust theories of equitable jurisprudence. The multiplicity of remedies available for a single wrong is, indeed, confusing. We should

---

[23] For breach of implied warranty of authority: "The third person can recover in damages not only for the harm caused to him by the fact that the agent was unauthorized, but also for the amount by which he would have benefited had the authority existed." Restatement, Agency, Second, § 329, comment *j*, p 85.

For misrepresentation: "The person to whom an agent has tortiously misrepresented the existence of his authority has all the remedies afforded to one who has been deceived. Thus, he can bring an action for any damage that he has suffered, or he can rescind the transaction and recover from the purported agent anything given to him or the value of anything given to a third person." Restatement, Agency, Second, § 330, comment *c*, p 87.

not be too quick to fault the profession on the firing line for not perceiving that which appears manifest in the relatively unhurried environment in which we work. The concept of unjust enrichment as a restitutionary remedy has been referred to as a working hypothesis,[24] one whose history is unclear and whose future cannot be defined. A cohesive explanation of remedies, restitutionary or otherwise, is yet to be achieved. Those who venture into the restitution thicket not infrequently become lost. It is part of our task to see that they are heard from again.

In *Prudential Insurance Company of America* v. *Cusick* (1963), 369 Mich 269, 289, 290, 4 Justices joined in the controlling opinion which considered a question neither raised nor considered below, nor argued on appeal:

"Granted, and what of it, even though counsel may snore steadily at the table assigned to them? Courts of equity—trial and appellate—are supposedly and exclusively governed by principles of equity, aided but not controlled by the presentations of counsel. Their chancellors are directed to concern themselves with the equitable rights of the assembled parties; not the granitic grooves of the law. They are required, as I understand equity jurisprudence, to enter or uphold that decree which in conscience is right upon the whole record, no matter what points of law or fact counsel may stress, and the sooner that truism is judicially understood,

---

[24] "In the law of quasi-contract we have felt our way. It is difficult to see how we could have done otherwise. In 1760 it was utterly impossible to foresee all the implications of Mansfield's core idea that an unexplained gain received in the form of money must be restored if justice is to be served. It is still impossible for us to foresee all the implications of our own conception that any unexplained gain (not only money) must ordinarily be restored through quasi-contract if a money judgment will suffice. This is. not a rule. Strictly speaking, it never can be a rule. It is at most a working hypothesis. We have built up this hypothesis step by step, through the methods of case law." Dawson, Unjust Enrichment, pp 25, 26. See, also, at pp 117, 150–152.

the sooner will beneficence of equity blossom fully as it should. * * * We are called upon to grant or deny relief according to the equity of the case without any restriction occasioned by the act or omission of counsel. At least that is the way we should proceed, and doubtless will in future equity cases when some other counsel has neglected to raise an evidentiary question this Court should raise, on its own, for the sake of the equity of the case and the preservation of equity jurisprudence."

Obviously, we cannot allow litigants freely to relitigate. Here, allowing a new trial would not give the plaintiff another crack at the same or a different trier of fact on a factual issue resolved against him. We may, as the Court observed in the last cited case, see that justice is done without regard to errors of counsel. It is just as much a part of our business to correct the conceptual mistakes that occurred during this trial as it is to remedy the out-of-court mistakes that gave rise to plaintiff's claim.

Here plaintiff proved Sonia Dunn guilty of fraudulent representation. As the trial judge observed in his letter to counsel, "To allow the parties to remain where they are now would be unjust to the plaintiff." We are not without remedy to right the matter.